## GASTON v. BRANDENBURG.

1. ESTOPPEL—AGRICULTURAL LIEN.—Where a farmer agrees to take four bales of cotton at ten cents per pound, to be sold by him and applied to the cultivation of a crop, and gives to the seller a note for the cotton so to be received, and secures the payment of this indebtedness by giving a lien on the crops to be raised during the year, declaring that the consideration is supplies to be advanced and furnished by the lienee, and the lienee afterwards delivers the cotton, having no notice of any other intended disposition of this cotton, the lienor is estopped from resisting the execution of a warrant to enforce this lien by showing that the cotton was sold by him and applied to purposes other than the raising of crops.

2. IBID.—What is required to work an estoppel, stated.

3. IBID.—EVIDENCE.—Testimony is incompetent to prove facts at variance with what has been so stated as to work an estoppel.

4. AGRICULTURAL LIEN—AFFIDAVIT—BOND.—A warrant to enforce an agricultural lien will not be vacated for failure of the clerk of court to mark "filed" the affidavit upon which the warrant was issued, or to require probate of the lienee's signature to the bond then given by him and witnessed by the clerk.

Before GARY, J., Spartanburg, January, 1894.

Motion by W. D. Brandenburg to vacate warrant issued against his crops at the instance of A. W. Gaston.

*Messrs. Bomar & Simpson*, for appellant.

*Messrs. S. M. Pilgram* and *Duncan & Sanders*, contra.

September 25, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. At the January Term, 1894, of the Court of Common Pleas for Spartanburg, in this State, a motion

was made by W. D. Brandenburg before his honor, Judge Ernest Gary, to set aside and vacate a lien warrant which had been issued by T. R. Trimmier, as clerk of the Circuit Court for Spartanburg County, against the crops grown by said Brandenburg during the year 1891, upon the application for said lien warrant by A. W. Gaston. At the hearing, Judge Gary signed an order vacating and setting aside such lien warrant, on the ground that it appeared from the evidence submitted that the lien in question was given to secure the purchase money of four bales of cotton furnished after the execution of said lien, but not for the purpose of expending said cotton on the crop to be made.

From this decision A. W. Gaston has appealed to this court, alleging that the Circuit Judge erred: 1. In holding that the lien in this case was not a valid lien. 2. In holding that the advances made by Gaston to Brandenburg were not such as he could furnish under the laws of this State relating to agricultural liens, and the lien was, therefore, void. 3. In not holding that Brandenburg was and is estopped from taking the position that the articles advanced to him were not such articles as could be advanced under the lien law. The respondent gave notice that in the event this court could not sustain the judgment on the grounds on which it was based, he would ask that it be sustained on the additional grounds: 1. That his honor should have held that it was necessary to file the affidavit on which the warrant was issued in the office of the clerk of the (Circuit) court, and that a failure to do so was sufficient ground to vacate and set aside the warrant. 2. That his honor should have held that it was necessary for the bond or undertaking of Gaston to be witnessed and probated before it could be filed, and that a failure to do so was sufficient ground to vacate and set aside the warrant.

We are inclined to think that when the lienor signed under seal the obligation set out in the "Case," wherein he stipulated:

"On or before the 11th day of November, 1891, I promise to pay to the order of A. W. Gaston at Reidville, one hundred and ninety-four and 72–100 dollars, for value received, in supplies to be advanced and furnished me by A.

W. Gaston, farmer at Reidville, in the said State and county, for use in the cultivation of crops on the plantation or farm cultivated by me and my tenants on lands belonging to myself and A. F. Crosswell * * * during the year 1891, which advances not to exceed one hundred and ninety-four and 72–100 dollars, the said A. W. Gaston (the lienee) agrees to make from time to time during the year," and both lienor and lienee signed the same, stipulating for the usual lien upon such crops for the sum aforesaid—the minds of the two certainly met in the creation of a contract easily understood. When the lienor comes to testify (and it may be remarked that his is the only testimony offered), he says that he went to see Mr. A. W. Gaston early in the year 1891 to borrow money, but Mr. Gaston replied to such request that he had no money, and that although he had cotton, he did not wish to sell till 1st May of that year, when he thought cotton would be worth ten cents a pound; that he told Mr. Gaston that he wanted the money to make his crop with; that he would take his cotton at ten cents a pound, and sell it for the money upon which to make his crops that year, and that he preferred this course to buying goods at the store at credit or "on time" prices; that although he did use a greater part of the money realized from a sale of the cotton in the payment of antecedent debts, still he did not tell Mr. Gaston of that fact or of such an intention. These four bales of cotton were not delivered to him until after he had signed the lien.

Now the serious question in this case occurs in this wise: Here is a lienor, not any other person—for it is not alleged that there is any other person affected one way or the other by this transaction between Brandenburg and Gaston—we repeat it, here is this lienor, Brandenburg, seeking to avoid his admissions in writing under his hand and seal, duly recorded as required by law, whereby he induced Gaston, the lienee, to part with his property under the stipulation that he, Gaston, would apply such advances so made to the making of a crop by himself and his tenants during that year 1891, on lands specifically enumerated. Can he do it? We think he ought not to be allowed to do so. There is such a thing in law as an estoppel by conduct which will prevent such an injustice, and this principle of law

is enforced in the courts of this State. *Phinney* v. *Johnson*, 13 S. C., 29; *City Council of Charleston* v. *Caulfield*, 19 S. C., 201. Is this principle applicable to the present state of facts? Let us see what is required. The rule requires: 1. A false representation or concealment of facts. 2. Such representation must have been made with a knowledge of the facts. 3. The party to whom such representation was made must have been ignorant of the truth of the matter. 4. The representation must have been made with the intention that the other party should act upon it. And 5. The other party must have been induced to act upon it. Bigelow on Estoppel (3d edit.), 434.

It clearly appears from the testimony that Brandenburg represented to Gaston that the cotton was to be converted in money, to be used in the cultivation of crops on lands in Spartanburg during the year 1891, by himself and his tenants, and that he would secure such advances by a lien on such crops. When Brandenburg made this or these representations, he had knowledge of the facts. Very clearly Gaston would not have allowed his money or cotton to be used by Brandenburg, except used for the cultivation of crops on lands in Spartanburg County during the year 1891, and its repayment secured by a lien on such crops, and that he was in ignorance of the purpose of Brandenburg to divert such advances from their appropriation to the making of such crops. It is equally certain that Brandenburg intended that Gaston should act upon his representations. And, finally, that Gaston was induced to act upon such representations. It seems to us that the "Case" makes all these matters clearly and distinctly. When it is remembered that whenever it is determined that the doctrine of estoppel applies to a case that any testimony at variance with such full application becomes incompetent, and, hence, as the other grounds of appeal are based upon such incompetent testimony alone, no further consideration of them need be entered into.

It remains for us to consider the grounds suggested by the respondent upon which the judgment of the Circuit Court could be sustained, in the event we sustained appellant's grounds of appeal. The respondent suggests, in the first place, that be-

cause the affidavit of Gaston, upon which Trimmier, as clerk, issued the lien warrant, was not filed in the office of the clerk of court, that such lien warrant should be vacated. It is thus seen that it is not contended that Gaston failed to make the affidavit required by our statutes as a condition precedent to the issuing from the clerk of the lien warrant, but only that such affidavit was not filed in the clerk's office. This filing is done by the clerk himself. It would seem that it would be quite a hardship to visit upon Gaston any penalty for an omission of duty by the clerk. Under the circumstances of this case, we will decline to make Gaston responsible for this oversight of the clerk, especially as it is not alleged that such affidavit is not amongst the papers connected with this proceeding in the clerk's office, but merely that it is not marked filed.

In the second place, the respondent suggests that the bond exacted of Gaston by the clerk before he issued the lien warrant should have been witnessed and probated before it was filed. It seems that the said Gaston entered into the bond before the clerk of court, such clerk signing his name thereto as a witness. This bond was to protect Brandenburg. Suit thereon would have been at his instance. Could Gaston have successfully defended such suit because of such trivial irregularity? We think not. These suggestions of respondent are overruled.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court, with directions to formulate a judgment dismissing the motion of Brandenburg.