8682

FARMERS BANK AND TRUST CO. v. SOUTHERN GRANITE CO.

1. MORTGAGES—ESTOPPEL—CORPORATIONS.—An individual holding a first
   mortgage on the lands of a corporation is not estopped from assert-
   ing his lien by signing as the secretary of the corporation bonds of
   the corporation headed "First Mortgage Bonds" and "Second Mort-
   gage Bonds," the bonds containing no affirmation that they are
   secured by first and second mortgages, he having made no other rep-
   resentation as to them.
2. ESTOPPEL—BURDEN OF PROOF.—One setting up estoppel must show
   that he has been misled to his injury.
3. REFERENCE.—Motion to recommit to reference for taking further
   evidence is addressed to the discretion of the Court.
4. APPEAL—FINDINGS OF FACT—ISSUES.—Appellant must satisfy this
   Court that the concurrent findings of fact by the Circuit Judge and
   referee are against the preponderance of the evidence.

Before SEASE, J., February, 1913.    Affirmed.

Action by Farmers Bank and Trust Co. and T. J. Straight
against Southern Trust Co., Charlotte Trust Co. *et al.*
Defendants, Southern Trust Co. and Charlotte Trust Co.,
appeal.

## REFEREE'S REPORT.

"Alleging that they are the owners and holders of a note
and mortgage, executed by defendant, Southern Granite
Company, on May 4, 1908, in the sum of $15,000 in favor
of plaintiff, T. J. Strait, the plaintiffs commenced this action
on July 7, 1911, for the foreclosure of said note and mort-
gage. The defendant, Charlotte Trust Company, was made
a party defendant, as alleged in the complaint, because it
holds a deed of trust and an indenture of trust on the real
estate covered by the mortgage sought to be foreclosed in
this action, to secure certain bonds issued by defendant,
Southern Granite Company. The other defendants were
made parties because, as alleged, they are judgment creditors
of defendant, Southern Granite Company. Notice of

pendency of this action was duly filed on the 7th day of July, 1911, in the offices of the register of mesne conveyances for the counties of Lancaster and Kershaw, in this State, the lands in question lying partly in both of said counties, but chiefly in Lancaster county.

"The complaint alleges the execution and delivery by the said defendant, Southern Granite Company, to the plaintiff, T. J. Strait, of the note for $15,000, under date of May 4, 1906, due June 11, 1906, which note provides for the payment of interest on said principal at the rate of eight per centum per annum, payable annually, and also for ten per cent. of the principal thereof additional for attorney's fees in case said note should be placed in the hands of an attorney at law for collection after maturity; alleges the execution and delivery of a real estate mortgage upon the said tract of 1,093 acres of land in Lancaster and Kershaw counties, South Carolina, to secure the payment of said note; alleges the record of said mortgage in Lancaster and Kershaw counties on September 18, 1908, and September 21, 1906, respectively.

"The complaint further alleges the assignment and transfer of the said note and mortgage on May 5, 1906, by plaintiff, T. J. Strait, to the Charlotte National Bank, as security for a note of $3,000, given by said T. J. Strait solely for the accommodation and benefit of the said defendant, Southern Granite Company; that, subsequently, on November 11, 1910, said note and real estate mortgage for $15,000 so held as collateral security, together with the said $3,000 note for which said former note was held as security, were duly transferred and assigned by the said Charlotte National Bank to the said plaintiff, Farmers Bank and Trust Company, for valuable consideration, and that said plaintiff is the owner of the same to the extent of the consideration so paid by said plaintiff, and that plaintiff, T. J. Strait, is the owner of the remainder of said original note and the mortgage securing same.

"It is also alleged in the complaint that the Charlotte Trust Company, as trustee, for certain bondholders, and the several judgment creditors named, hold liens on the said real property junior in right to the mortgage sought to be foreclosed herein; and judgment is asked for the sale of the mortgaged premises and an application of the proceeds to the payment of the several lien debts held by the plaintiffs and the defendants named, in accordance with their respective legal priorities, after first paying the costs and disbursements of this action and the attorney's fees for the attorneys for the plaintiffs herein.

"The answer of the defendant, Southern Granite Company, admits the execution and delivery of the note and mortgage for $15,000 and the record of said mortgage in Lancaster and Kershaw counties, as alleged, and the transfer of the same to the Charlotte National Bank as already stated; but avers that the said defendant is without knowledge or information as to the alleged transfer of the said note and mortgage to the plaintiff, Farmers Bank and Trust Company, and denies that plaintiff, T. J. Strait, is entitled to any part of any sum of money that may be due upon said note and mortgage.

"Further answering, the said defendant alleges: 'That on the 18th day of April, 1907, the said T. J. Strait made and entered into a written agreement with this defendant, of which the following is a copy: "Whereas, Southern Granite Company is indebted to me, T. J. Strait. in the sum of fifteen thousand ($15,000) dollars, which indebtedness is secured by a mortgage of one thousand and ninety-three (1,093) acres of land owned by the Southern Granite Company; know all men by these presents, that I, T. J. Strait, in consideration of the agreement made on the part of the Southern Granite Company, hereinafter stated, and in further consideration of the sum of one ($1) dollar to me in hand paid by said Southern Granite Company, do hereby · covenant and agree to enter full satisfaction upon said mort-

gage, and the Southern Granite Company, in consideration thereof, agrees to deliver to the said T. J. Strait its first mortgage bonds to the amount of seven thousand five hundred ($7,500) dollars and its second mortgage bonds to the amount of seven thousand five hundred ($7,500) dollars, which bonds are to be delivered to said T. J. Strait as soon as same are issued; said bonds to be a part of a fifty thousand ($50,000) dollar bond issue of said Southern Granite Company. Witness our hands and seals this 18th day of April, 1907. (Signed) Southern Granite Company. By S. W. Heath, Pres. (L. S.), T. J. Strait (L. S.). Witness: E. D. Blakeney." '

"The said defendant further alleges: 'That, at the time of the execution of the above agreement, the said T. J. Strait was and is now a director and officer of defendant company, to wit: secretary thereof, and joined in the execution of the bonds and mortgages contemplated in said agreement, which bonds and mortgages were, with the co-operation of said T. J. Strait, placed in the hands of the Charlotte Trust Company, as trustee and custodian for those entitled thereto, including the said T. J. Strait, whereby this defendant has complied with the agreement hereinabove set out, and this defendant is, therefore, entitled to have cancelled the mortgage herein sought to be foreclosed. That, at the time of the alleged assignment of the note and mortgage to plaintiff herein, the same had been fully discharged by virtue of said agreement between T. J. Strait and this defendant, as above set forth, and this defendant is, therefore, entitled to have said mortgage cancelled. That, as this defendant is informed and believes, the note and mortgage sought to be foreclosed were transferred and assigned to the plaintiff, Farmers Bank and Trust Company, after maturity, and that said plaintiff took same subject to the equities existing between the parties thereto. That, heretofore, on the first day of May, 1907, this defendant, for value received, executed and delivered and caused to be authenticated by the

defendant, Charlotte Trust Company, · as trustee, as herein set forth, its certain bonds, numbered from one to one hundred inclusive, dated May 1, 1907, for the sum of five hundred dollars each, with interest thereon at the rate of six per centum per annum, payable semiannually, on the 1st day of January and the 1st day of July in each year thereafter, as evidenced by certain interest coupons attached to each of said bonds, which said bonds were issued and denominated first mortgage bonds. That heretofore, on the 1st day of September, 1907, this defendant, for value received, executed and delivered and caused to be authenticated by this defendant, as trustee, as herein set forth, its certain bonds numbered from one to one hundred inclusive, dated September 1, 1907, for the sum of five hundred dollars each, with interest thereon at the rate of six per cent. per annum, payable semiannually, on the first day of January and the 1st day of July in each year thereafter, as evidenced by certain interest coupons attached to each of the bonds, which said bonds were issued and denominated as second mortgage bonds. That, to secure the payment of the said bonds and the interest accruing thereon, this defendant did, on the 1st day of May, 1907, and the 1st day of September, 1907, deliver to the defendant, Charlotte Trust Company, as trustee aforesaid, for the benefit of the holders of its said bonds, its certain mortgage or deed of trust, wherein and whereby it conveyed by way of mortgage to the defendant, Charlotte Trust Company, as trustee, the tract of land described in the sixth paragraph of the complaint herein, together with all personal property, consisting of machinery and tools constituting the operating plant of this defendant, and all rents and profits derived therefrom. Further answering the complaint herein, this defendant alleges that this defendant has defaulted in the payment of the interest upon the bonds hereinabove set forth, and that said interest is now past due and unpaid. That this defendant is heavily indebted and hopelessly insolvent, there being a number of unpaid, out-

standing judgments, as well as numerous unpaid claims in the hands of attorneys at law for collection, and that this defendant is threatened with numerous, expensive and vexatious litigations, which, if permitted to be pressed, will seriously impair its assets to the detriment of its creditors.' The said defendant, therefore, prayed for the appointment of a receiver of its assets and the calling in of creditors to establish their demands.

"The answer of the defendant, Charlotte Trust Company, which is made a party defendant as trustee for the bondholders, is substantially to the same effect, said defendant further alleging that by the terms of the said deeds of trust or mortgages securing the said bonds it is stipulated that in the event default be made in the payment of interest or principal of said bonds or any part thereof, at maturity, the said defendant, as trustee, should be entitled to a commission of five per cent. as attorney's fee. This defendant also prays for the appointment of a receiver for the said Southern Granite Company. The other defendants filed no answer.

"On July 27, 1911, by order of Judge S. W. G. Shipp herein, M. C. Heath was appointed receiver for the said Southern Granite Company, and the undersigned was subsequently appointed as special referee to take testimony for the proof of claims and also to take testimony and report upon all the issues of law and fact herein.

"In obedience to said order of reference, an advertisement for proofs of claims was made as required by said order and several references were held for that purpose and for the taking of testimony upon the issues of law and fact as raised by the pleadings. The present holders of bonds secured by trust deeds or indentures set up in the answers aforesaid have come in before the referee and have established the bonds held by them as hereinafter stated.

"Having concluded the taking of testimony, and after hearing argument of counsel, upon consideration of the

evidence, the undersigned referee makes the following report:

## Findings of Fact.

1. "That, on the 4th day of May, 1906, the defendant, Southern Granite Company, a corporation duly organized under the laws of the State of South Carolina, for value received, made and delivered to the plaintiff, T. J. Strait, its promissory note in writing, dated on that day, whereby the said defendant contracted and agreed to pay to the said T. J. Strait or order the sum of fifteen thousand dollars, due and payable on June 11, 1906, with interest from date at the rate of eight per centum per annum, payable annually. In and by said note it was further stipulated that ten per centum of the principal thereof additional should become due thereon for attorney's fees, in case said note should be placed in the hands of an attorney at law for collection after the maturity thereof. The consideration of this note was a portion of the purchase price of the tract of land hereinafter described, being the land described in the complaint herein, situated in Lancaster and Kershaw counties, in said State, which lands had been previously conveyed by the said T. J. Strait to the said Southern Granite Company. No part of this note has ever been paid, and after the maturity thereof the same was placed in the hands of the attorneys for plaintiffs herein for collection.

2. "That, on the 4th day of May, 1906, for the better securing of the payment of said note, interest and attorney's fees, the said defendant, Southern Granite Company, duly executed and delivered to the said plaintiff, T. J. Strait, its deed under seal and thereby conveyed by way of mortgage to the said plaintiff, Strait, the following described tract of land, to wit: All that certain piece, parcel or tract of land, situate in the counties of Kershaw and Lancaster, containing one thousand ninety-three acres, bounded north by lands of T. J. Strait and lands known as the Stinson place; south by lands commonly known as Patterson lands; east by Stinson

lands of J. R. MaGill, F. M. Hammond and Wardlaw lands; west by lands of T. J. Strait, land commonly known as Warrenton place, and lands of McDowell, and being the same tract of land conveyed to the Southern Granite Company by T. J. Strait, and dated July 3, 1905.

3. "That, on the 18th day of September, 1906, the said mortgage was duly recorded in the office of the register of mesne conveyance for the said county of Lancaster, in Real Estate Mortgage Book No. 11, page 430; and that on the 21st day of September, 1906, the said mortgage was duly recorded in the office of the register of mesne conveyance for the said county of Kershaw, in Real Estate Mortgage Book LLL, page 345.

4. "That, on the 5th day of May, 1906, the said T. J. Strait executed and delivered to the Charlotte National Bank, a corporation duly incorporated, his certain promissory note in writing, dated on that day, whereby for value received the said T. J. Strait promised to pay to the said Charlotte National Bank 'or order,' the sum of three thousand ($3,000) dollars, due and payable thirty days from the date thereof, without grace, at the banking house of the said Charlotte National Bank, in Charlotte, N. C. It was proven at the reference that the said note was an accommodation note by the said T. J. Strait for money loaned by the said Charlotte National Bank to the said defendant, Southern Granite Company, and the said note was executed by the said T. J. Strait to the said Charlotte National Bank as an accommodation for the said Southern Granite Company, and that the said Southern Granite Company, in consideration thereof, agreed to pay the said note, at the maturity thereof, to the said Charlotte Naional Bank to the exoneration of the said T. J. Strait. No part of this note has ever been paid, except the interest thereon up to March 1, 1908; and it is admitted that payment of said note was duly demanded from Southern Granite Company and payment thereof refused.

5. "That, on the 5th day of May, 1906, the said plaintiff, T. J. Strait, for the better securing the payment of the accommodation note aforesaid and with the knowledge and consent of the said defendant, Southern Granite Company, by endorsement thereof assigned and transferred to the said Charlotte National Bank the said note for fifteen thousand dollars of the Southern Granite Company to him made payable, dated May 4, 1906, and due June 11, 1906, as above stated; and, on the same day, likewise, as collateral security as aforesaid, assigned and transferred to the said Charlotte National Bank in due form the said mortgage securing the said fifteen thousand dollar note.

6. "That, on the 11th day of November, 1910, for value received, the said Charlotte National Bank duly sold, assigned and transferred to the plaintiff, Farmers Bank and Trust Company, the said three thousand dollar note and also the said fifteen thousand dollar collateral note and mortgage executed as aforesaid by the said defendant, Southern Granite Company, to the said T. J. Strait. It is admitted that the plaintiff, Farmers Bank and Trust Company, is the owner of the said notes and mortgage so transferred to it by the said Charlotte National Bank, to the extent of the consideration paid by it therefor, to wit: the sum of three thousand seven hundred and twenty-one and 67-100 ($3,721.67) dollars, being principal and interest to date of said transfer, November 11, 1910, on said three thousand dollar note, besides interest thereon from November 11, 1910, at the rate of eight per centum per annum from said last mentioned date. It is also conceded that the said Farmers Bank and Trust Company, being assignees for value of the said Charlotte National Bank, and the said Charlotte National Bank, being purchasers for value before maturity and without notice, are *bona fide* holders for value without notice in so far as concerns their interest in the said collateral note for fifteen thousand dollars aforementioned,

since they stand in the shoes of the said Charlotte National Bank.

7. "It is also conceded by defendants in argument before me that the portion of the said mortgage owned by the said bank is a valid first lien on the mortgage premises above described and should be allowed as such, together with three hundred dollars as reasonable attorney's fees to the attorneys for plaintiff, Farmers Bank and Trust Company, for . the prosecution of this action on their behalf, such attorney's fees being secured by said mortgage as stipulated in the note.

8. "The right of the plaintiff, Strait, to recover the remainder of the amount due on the said fifteen thousand dollar note, as well as the right to the remainder of the amount of the attorney's fees thereby stipulated and secured by the said mortgage, is contested.

"The agreement already recited between plaintiff, T. J. Strait, and the defendant, Southern Granite Company, dated April 18, 1907, was offered in evidence by the defendants and was marked and will hereinafter be referred to as Exhibit 'L.'

9. "The bonds styled 'first mortgage bonds,' represented by the defendant, Charlotte Trust Company, as trustee for the bondholders, bear date the 1st day of May, 1907, and the bonds styled 'second mortgage bonds,' represented by the same trustee, are dated September 1, 1907; and the deed of trust and indenture of trust, respectively, securing said bonds, bear dates of May 1, 1907, and September 1, 1907, respectively. These deeds and indentures of trust cover the tract of land already described, and also 'all other properties, franchises, and rights owned by the said Southern Granite Company.' The bond issues and indentures of trust just mentioned were for amounts of bonds as follows: (1st) One hundred bonds of the par value of five hundred dollars each, dated May 1, 1907, and due May 1, 1927, with coupons for semiannual interest at the rate of six per cent. per annum, secured by said deed of trust of date May 1,

1907, as above mentioned. (2d) One hundred bonds of the par value of five hundred dollars each, dated September 1, 1907, and due September 1, 1927, with coupons attached for semiannual interest at the rate of six per cent. per annum, secured by indenture of trust, dated September 1, 1907, above mentioned.

10. "The present holders of these bonds have come in as parties to this action and have established their claims as holders of said bonds as follows: * * *

11. "The following unsecured claims were established before me against the said Southern Granite Company: * * *

(Second) "The following are claims in judgment, not preferred: * * *

(Third) "The following notes and accounts were also etsablished: * * *

12. "From the evidence in this case I find that no valid tender or delivery was ever made to the plaintiff, T. J. Strait. of the bonds stipulated to be delivered to him as a condition of the agreement contained in Exhibit 'L,' already cited. By the terms of this agreement such bonds were to be delivered to the said T. J. Strait 'as soon as issued,' and it is apparent from the evidence that the said bonds were issued on the first day of May, 1907, as to the first series thereof, and the first day of September, 1907, as to the second series thereof. The first attempt at a tender of these bonds was made in the summer of the year 1909, long after the issue thereof, and at a time when the same were depreciated in value. Furthermore, at the time of such tender, nearly two years had elapsed since such issue of the bonds in question, and there were then past due interest coupons upon said bonds for interest due January 1, 1908, July 1, 1908, January 1, 1909, and July 1, 1909, and no tender of the payment of such past due interest coupons was made nor has any payment of any such interest coupons ever been made or tendered. Moreover, as has been already stated, it appears from the testimony in the case, that the true agreement

between the plaintiff, T. J. Strait, and the defendant, Southern Granite Company, was that the said Southern Granite Company should pay the three thousand dollar debt aforesaid to the Charlotte National Bank, represented by the note aforesaid, dated May 5, 1906, and falling due thirty days after said date, which was collaterally secured by the mortgage which was given to secure the indebtedness to the plaintiff, Strait, of the said Southern Granite Company, as already stated; and no such payment or tender of the said amount so due on the said debt to the Charlotte National Bank has ever been made. Under the said agreement such payment was a condition precedent to the right of the defendant, Southern Granite Company, to demand the entry of satisfaction upon the said fifteen thousand dollar mortgage."

### Conclusions of Law.

1. "The principal question in the case is as to the effect of the agreement aforesaid between plaintiff, T. J. Strait, and the defendant, Southern Granite Company, for the acceptance of certain bonds in satisfaction of the said fifteen thousand dollar mortgage debt due to plaintiffs. As to this matter, the conclusion has been reached that, as the agreement (Exhibit L) stipulated for a total issue of fifty thousand dollars of first and second mortgage bonds in the aggregate, and since, as matter of fact, the bond issue actually made was to an aggregate of one hundred thousand dollars, the plaintiff, Strait, could not be required to accept any part of such issue of bonds, such issue being in excess of the amount specified in the agreement; and as no tender or delivery of the bonds to plaintiff, Strait, was made at the time stipulated in the agreement (Exhibit L), a tender thereof at a later date, at a time when said bonds had become greatly depreciated in value, was not such a legal tender as to be a compliance with the requirements of said agreement. The contract expressly stipulated that these bonds should be delivered to plaintiff, Strait, 'as soon as issued;' and this require-

ment appears to have been of the essence of the contract, and a tender made for the first time some two years after the time stipulated, and when said bonds were much depreciated in value, was not a compliance with the true intent of said agreement. The plaintiff, Strait, could not, therefore, be then required to accept such depreciated bonds in satisfaction of said mortgage debt.

"Furthermore, the evidence shows that the defendant, Southern Granite Company, instead of tendering or delivering said bonds to plaintiff in accordance with said agreement (Exhibit L), was using the same for its own purposes, and did put up $5,000 of said bonds as collateral security for a loan by the First National Bank of Lancaster, S. C., on February 4, 1908, and in May, 1907, did hypothecate some of the said bonds with the Springs Banking and Mercantile Company as security for a loan. Since the defendant, Southern Granite Company, was so making use of the bonds for its own purposes and so failing to comply with the agreement, said defendant cannot at this late day be permitted to tender said bonds as a compliance with, its agreement to deliver the same as 'soon as issued.'

"It thus appears that the agreement in question (Exhibit L) was broken by the defendant, Southern Granite Company, long before the commencement of this action, and therefore cannot operate as a defense. This contract, as shown by the evidence, was partly written and partly oral. It is true that the defendants objected to some of the oral evidence as not being admissible; but this objection cannot be sustained.

"Where a written contract is silent as to certain matters of the agreement between the parties, oral evidence may be admitted as to such matters, and such oral evidence does not vary the written contract. *Calvin* v. *Oil Company*, 66 S. C. 61; *Crawford* v. *Owens*, 79 S. C. 59; *Chemical Company* v. *Moore*, 61 S. C. 166; *Buist* v. *Mercantile Co.*, 69 S. C. 363.

"Even the defendant's evidence shows that it was a part of the contract that the defendant, Southern Granite Company, should pay the debt to the Charlotte National Bank, which is now held by the plaintiff, Farmers Bank and Trust Company, and that such debt was really the debt of the said Southern Granite Company and was to be paid by it before it could ask the plaintiff, Strait, to accept any bonds in satisfaction of his mortgage. The very mortgage in question was held as collateral security for the Southern Granite Company's debt, and this debt to the bank having never been paid by the said Southern Granite Company, there was a failure by it to comply with a condition precedent of its agreement, since plaintiff, Strait, could not accept the bonds or mark his mortgage satisfied until the debt of the Charlotte National Bank (now held by the plaintiff, Farmers Bank and Trust Company) was paid by the defendant, Southern Granite Company, in accordance with said defendant's agreement, while the said bank held the mortgage in question as collateral to such debt of the Southern Granite Company.

"The evidence also shows that, as a part of said agreement, the defendant, Southern Granite Company, was also bound to pay the interest on the said fifteen thousand dollar mortgage debt held by plaintiff, Strait, against said defendant, up to the time of the issuance and delivery of the said bonds, before said plaintiff could be required to accept said bonds in satisfaction of the said fifteen thousand dollar mortgage. Having failed to do this, as well as to pay the said three thousand dollar debt to the bank, the defendant, Southern Granite Company, failed to comply with its contract, and the plaintiff, Strait, could not be required to accept a tender of said bonds as in satisfaction of said mortgage debt.

"Moreover, from the very terms and nature of the agreement in question, it was essential that the defendant, Southern Granite Company, should comply with its agreement to

deliver the bonds 'as soon as issued;' and the failure to do so was a failure to comply with an essential part of the contract and a failure to perform such a prerequisite of the contract on the part of the defendant, Southern Granite Company, which relieved the plaintiff, Strait, of all obligations to surrender his original mortgage security. See 9 Cyc. 605, 606; 4 Pom. Eq. Juris. 1407, and note. It seems to be clear, also, that the agreement to accept $15,000 of first and second mortgage bonds out of a total issue of $50,000 of such first and second mortgage bonds cannot bind the plaintiff, Strait, so as to require acceptance by him of $15,000 of bonds out of a total issue of $100,000 of such first and second mortgage bonds.

"For the reasons stated, therefore, it must be concluded that the defense herein interposed and founded upon the agreement aforesaid must be overruled; and it must be adjudged that the said mortgage debt held by the said plaintiff, Strait, is a valid outstanding first lien upon the said mortgaged premises.

2. "It is claimed by the defendants that the plaintiff, Strait. is now estopped from enforcing his said mortgage by reason of the fact that, as secretary of the defendant, Southern Granite Company, he signed officially the bonds and mortgages of May 1, 1907, and September 1, 1907, now held by the defendant, Charlotte Trust Company, as trustee for the bondholders already named.

"As to the matter of such alleged estoppel, there is no evidence whatever that any bondholder has been misled by any such signing by the said plaintiff, Strait, in his official capacity or otherwise; and it is well settled that, in order to work an estoppel by any representations contained in a bond or mortgage, it must appear that the party seeking to invoke the same was misled to his injury by such representations. See *Diller* v. *Debaker,* 91 Am. Dec. 177; *Jewell* v. *Miller,* 61 Am. Dec. 755, and cases cited in note at page 756; *Mills* v. *Graves,* Dec. 316; *Earle* v. *Stevens,* 57 Vt. 474.

"Furthermore, there is no language used in said bonds or mortgages amounting to any representation that the plaintiff, Strait, did not hold a prior mortgage upon the lands in question, while such prior mortgage, being in fact of record in the proper offices, was notice to all the world of its existence and contents. The only words relied upon consist merely of the headings characterizing the bonds in question as 'first mortgage bonds' and 'second mortgage bonds' of the Southern Granite Company; and there is no representation in the bonds or in the mortgages that the same are prior and preferred liens on the premises in question and superior to the lien of the prior mortgage on the land duly recorded in favor of the plaintiff, Strait.

"In order to constitute an estoppel, the words used in the instrument must be certain to every intent and must not be taken by way of argument or inference. There must be a precise affirmation of that which creates the estoppel and not by way of recital. *Mills* v. *Graves,* 87 Am. Dec. 314, 316, 318; 16 Cyc. 700; Bigelow on Estoppel 302; 16 Cyc. 709.

"In the bonds here in question, or the mortgages securing the same, there is plainly no such certainty of intent. The only matter upon which it could be claimed that there was any representation as to the bonds and mortgage of May 1, 1907, is the mere use of the phrase, "first mortgage bonds," of the Southern Granite Company, the same being manifestly a mere characterization of the bond issue as being the *first bonds* issued by the said company. It is a mere statement of the fact that such bonds belong to a *series* denominated 'first.' There is certainly no 'precise affirmation' that the mortgage is a first mortgage or a first lien upon the premises in question. It cannot be held to be a definite representation that there was not a prior mortgage then existing upon a part of the property in favor of the plaintiff, Strait, individually, of the existence of which prior mortgage there was notice by the record. The recital in

question cannot work an estoppel, the same being merely words of nomenclature of the series to which the bonds belong.

"It further appears, however, that the plaintiff, Strait, merely signed these bonds and mortgages officially, as secretary of the Southern Granite Company, and he was required officially to so sign the same by resolution of the stockholders and directors of the said Southern Granite Company. As is said by the Supreme Court of this State, in its latest deliverance upon the subject by Mr. Justice Woods: 'An officer of a corporation is not estopped as an individual by signing a deed for the corporation under the direction of the board of directors or superior officer of the corporation.' *Forbes* v. *Bowman,* 87 S. C. 508. See, also, *Kern* v. *Chalfont,* 7 Minn. 487; *Harper* v. *Little,* 11 Am. Dec. 25; Bigelow on Estoppel (3d Ed.) 275.

"It appearing that plaintiff, Strait, merely signed these bonds and mortgages officially as secretary of the Southern Granite Company, in pursuance of the requirements of a resolution of the stockholders and directors of the corporation as recited in the mortgage, plaintiff, Strait, could not be held individually bound by any recital therein. The forms of the bonds and mortgages given were fixed by the stockholders and directors of the Southern Granite Company, and by resolution of the company's stockholders and directors the plaintiff, Strait, was required to sign his attestation officially to same, and his performance of that duty in an official capacity as so required of him cannot operate to his prejudice individually or work an estoppel against him as an individual.

"Even, however, if the words used were sufficient to create an estoppel, there is no evidence that any of the bondholders were misled thereby, and if the bondholders were not misled, then no estoppel could arise in any event. It was incumbent upon those seeking to avail themselves of this doctrine of estoppel to show that they were actually misled

to their injury, and, having failed to make such showing, there is no ground upon which an estoppel could be based. See *Bethune* v. *McDonald,* 35 S. C. 88; *Scarborough* v. *Woodley,* 81 S. C. 331; *Diller* v. *Brubaker,* 91 Am. Dec. 177, and other cases already cited.

"It must, therefore, be concluded that the said plaintiff, Strait, is not estopped from setting up his said mortgage debt and that the same is a first lien upon the lands described therein.

"The referee, therefore, concludes:

1. "That the mortgage by the defendant, Southern Granite Company, to the plaintiff, T. J. Strait, dated 4th day of May, 1906, is a first lien upon the tract of land containing one thousand and ninety-three (1,093) acres, described in the complaint, to secure the payment of the amount due upon the said mortgage debt, to wit: The sum of fifteen thousand one hundred and twenty-three and 33-100, ($15,123.33) dollars, besides interest thereon from the 11th day of June, 1906, at the rate of eight per centum per annum, payable annually, besides the further sum of fifteen hundred ($1,500) dollars as attorneys' fees to the attorneys for plaintiff herein as stipulated in said mortgage.

2. "That the condition of the said mortgage has been broken and that the said lands should be now sold and the proceeds, after paying the costs and disbursements of this action to the said plaintiffs, should be applied first to the payment of the said mortgage debt.

3. "That, out of the proceeds going to pay the said mortgage debt, the plaintiff, Farmers Bank and Trust Company, is entitled to receive first the sum of three thousand dollars, with interest thereon from the 4th day of May, 1906 (as *bona fide* holders for value and without notice of the said debt to the Charlotte National Bank), the amount due to said plaintiff thereon being admitted at the hearing before me to be the sum of three thousand seven hundred and twenty-one and 67-100 ($3,721.67) dollars, with interest

thereon from the 11th day of November, 1910, and the said plaintiff, T. J. Strait, is entitled to receive the remainder of the amount due upon the said fifteen thousand dollar mortgage debt, the said attorneys for the plaintiff being entitled to receive as a part of the said mortgage debt and as attorneys' fees in addition thereto the said sum of fifteen hundred dollars out of said proceeds of sale, of which amount the sum of three hundred dollars is as attorneys' fees for the Farmers Bank and Trust Company and the remaining twelve hundred ($1,200) dollars as attorneys' fees for the said plaintiff, Strait.

4. "That, after the payment of the said costs and disbursements and attorney's fees and the said mortgage debt to the plaintiffs, the remainder of the proceeds of the said lands should be applied towards the payment of the preferred claims set out in subdivision 'first' of paragraph eleven of this report, and any remainder thereof should be applied towards the payment of the mortgage bonds to the various persons holding bonds as aforesaid secured by the mortgage or trust deed of May 1st, 1907, and any overplus then remaining should be applied towards the payment of the mortgage bonds to the various persons holding bonds as aforesaid secured by the mortgage or trust deed of date September 1, 1907. If any overplus of said proceeds of sale should then remain, the same should be applied to the satisfaction of the other claims as already mentioned."

## SUPPLEMENTAL REPORT OF REFEREE.

"By an oversight, the referee herein in his report dated September 23, 1912, failed to report that the attorney for defendant, Charlotte Trust Company, is entitled to a commission of five (5) per cent. on the amount of the first and second mortgage bonds of the Southern Granite Company, as attorney's fee. There is no controversy as to this matter and the referee amends his report of the above date by

changing the last paragraph of said report so that same shall read as follows:

" '4. That, after the payment of the said costs and disbursements and attorney's fees and the said mortgage debt to the plaintiffs, the remainder of the proceeds should be applied towards the payment of the preferred claims set out in subdivision "first" of paragraph eleven of this report, and any remainder thereof should be applied, first to the payment of the attorney's fee of the attorney for defendant, Charlotte Trust Company, as provided for in the deed of trust of May 1, 1907, and then towards the payment of the mortgage bonds to the various persons holding bonds as aforesaid, secured by the mortgage or trust deed of said date, and any overplus then remaining should be applied first to the payment of the attorney's fee of the attorney for the defendant, Charlotte Trust Company, as provided for in the deed of trust of date September 1, 1907, and then towards the payment of the mortgage bonds to the various persons holding bonds as aforesaid secured by the mortgage or trust deed of said date. If any overplus of said proceeds of sale should then remain, the same should be applied to the satisfaction of the other claims as already mentioned.'

### Second Supplemental Report of Referee.

"The attention of the referee herein, having been called to the fact that in his report dated September 23, 1912, no findings were made covering the fees, costs, disbursements and other expenses of the receiver heretofore appointed, on behalf of all parties interested in the affairs of the defendant, Southern Granite Company.

"The failure to report upon these matters being an oversight, the referee hereby amends his said report by amending the last paragraph of said report, and any other paragraph therein that may be inconsistent with the findings

herein submitted, that said amendment consists of the following:

"I conclude that the receiver should first be reimbursed for any amounts that he may have paid out by way of taxes, costs, or other necessary and proper expenses, together with his lawful commissions, and a reasonable attorney's fee to his attorney for services rendered him herein, and that the payment of same is a charge upon all the property and assets of the Southern Granite Company, and constitutes a prior and paramount lien thereon.

"It has also been called to the attention of the referee herein that the agreement between all the attorneys in this case that the claim of D. M. Jones for $400 for salary due by the company, and one of W. McD. Jones for $175.07 for salary due him by the company, and one of Jones & Son for $940.34 for wages advanced at the request of the company for the payment of laborers, and the judgment claim of W. M. Gooch shall be paid as preferred claims was understood by all parties to mean that claims were to be preferred to all other claims against the Southern Granite Company. The referee, therefore, amends his report of date September 23d, 1912, as follows:

"By striking out the words 'except the liens held by plaintiffs,' in paragraph eleven, on page 11 of said report, and by providing in his conclusion that the above mentioned claims should be paid first out of all the assets and property of the Southern Granite Company after paying the costs and disbursements of this action and before the payment of the mortgage debt of the plaintiffs."

## DECREE.

"This cause comes on to be heard before me upon the original and two supplemental reports by the referee and upon exceptions by certain defendants to the original report and by the plaintiffs to the second supplemental report.

"No question is made by these exceptions as to the priority and enforceableness of so much of the mortgage here in question as is held by the plaintiff, Farmers Bank and Trust Company; but the defendants do contest the priority and enforceableness of so much of the said mortgage as is held by the original mortgagee, T. J. Strait.

"Substantially but two main questions are presented by the exceptions taken by the defendants and the determination of these two questions are conclusive of all the exceptions on the part of the defendants. These questions are:

First. "Whether there was error by the referee in failing to hold that the paper writing recited in the report as 'Exhibit L' was such an agreement and so binding upon the plaintiff, Strait, as to constitute a contract and operate as against the plaintiff, Strait, as a satisfaction of the mortgage debt held by him.

Second. "Whether there was error by the referee in failing to hold that, by reason of the action of the said plaintiff, Strait, in officially signing certain bonds and mortgages issued by said Southern Granite Company, the said plaintiff is now estopped from setting up the said mortgage originally held by him. The paper in question, which is recited in the report of the referee and is denominated 'Exhibit L,' is an agreement signed by the plaintiff, Strait, and also appearing to be signed in the name of the 'Southern Granite Company, by S. W. Heath, president.' There is no evidence, however, that the affixing of the name of 'Southern Granite Company' to this paper was ever authorized by the stockholders or directors of said company, or that S. W. Heath, as president of said company or otherwise, was ever given power to sign the name of the Southern Granite Company to such paper or that he had any such power by virtue of his office.

"The agreement proposed in said 'Exhibit L' was that the plaintiff, Strait, would enter satisfaction upon the mortgage here in question, in consideration that the defend-

ant, Southern Granite Company, would give and deliver to said plaintiff, Strait, 'its first mortgage bonds to the amount of seven thousand five hundred dollars, and its second mortgage bonds to the amount of seven thousand five hundred dollars, which bonds are to be delivered to the said T. J. Strait as soon as same are issued; said bonds to be a part of a fifty thousand ($50,000) dollar bond issue by said Southern Granite Company.' This paper bears the date of April 18th, 1907, at which time no issue of bonds by the Southern Granite Company had ever been authorized or made.

"There is no evidence whatever of any authority at that time had or ever thereafter given to S. W. Heath to make any such agreement binding upon the company; and certainly no such authority can be implied in him. Since, therefore, S. W. Heath had neither express nor implied authority to bind the Southern Granite Company by any such signing of its name to such an agreement, it follows that the same, not being binding upon the company, could not be binding as a contract upon the plaintiff, Strait. At the time of the signing thereof, it amounted merely to a proposal on the part of the plaintiff, Strait, that it, the Southern Granite Company, would do certain things within a certain time, the plaintiff, Strait, would do certain other things in consideration thereof.

"No subsequent action was taken by the stockholders or directors of the Southern Granite Company in any way ratifying or confirming the unauthorized agreement made in the name of the company by S. W. Heath, as its president, and, therefore, the character of the paper thereafter remained as it originally stood when signed by plaintiff, Strait, as a mere proposal subject to acceptance or ratification by authorized action on the part of the company within the time therein stipulated. It follows, therefore, that 'Exhibit L,' never having been so accepted or ratified by any action of the company, never constituted a contract

binding upon the Southern Granite Company, and since, in order to constitute a complete contract, both parties thereto must be bound thereby, the said proposal in 'Exhibit L' never became binding as a contract upon the plaintiff, Strait. It is doubtless true that, by reason of the nominal consideration expressed and the consideration implied from the seal, 'Exhibit L' would have been binding upon the plaintiff, Strait, as a contract, had its terms been accepted or had it been ratified by the Southern Granite Company by any authorized action of its stockholders or directors, provided such acceptance or ratification had been made within the time stipulated by that instrument, or, perhaps, within a reasonable time. But no such action by way of acceptance or ratification by the Southern Granite Company, by its stockholders or directors or other authorized officer was ever had, so far as appears; and, therefore, 'Exhibit L' never became a contract, but remained and still remains a mere proposed agreement not accepted, acted upon or ratified by the Southern Granite Company. Whether it be considered that the contract fixed a time limit for its acceptance by the Southern Granite Company or that the Southern Granite Company was entitled to a reasonable time for acceptance of the proposal thereby made, the time for acceptance or ratification of the proposed contract had expired before the commencement of this action. For these reasons, therefore, if for no other, the conclusions of the referee, as to the matter of the noneffectiveness of 'Exhibit L,' as a defense to this action, should be confirmed.

"But the conclusions of the referee upon the question of the effect of 'Exhibit L' must be confirmed also upon the grounds stated by the referee, and especially upon the ground that the proposed agreement, 'Exhibit L,' contemplated a total issue by defendant, Southern Granite Company, of first and second mortgage bonds aggregating fifty thousand dollars, whereas, the bond issue actually made was to an aggregate of first and second mortgage bonds

9—96

to the amount of one hundred thousand dollars. The proposal made by plaintiff, Strait, in 'Exhibit L' being an offer to accept seven thousand five hundred ($7,500) dollars of first mortgage bonds, and seven thousand five hundred ($7,500) dollars of second mortgage bonds out of a total contemplated issue of fifty thousand dollars of bonds of the company, and the bond issue actually made being a total issue of one hundred thousand dollars of bonds, that is to say, fifty thousand of first and fifty thousand of second mortgage bonds, it follows that even if the Southern Granite Company had accepted or ratified said proposed agreement contained in 'Exhibit L,' such an acceptance or ratification would not have been effective to bind the plaintiff, Strait, to accept any part of such total issue of one hundred thousand dollars or mortgage bonds of the company. In other words, it having been proposed by plaintiff, Strait, merely that he would accept certain definite parts of an aggregate issue of $50,000 of bonds, it was no acceptance or ratification of that proposal for the Southern Granite Company to make an aggregate issue of twice that amount of bonds and propose then to Strait to accept a portion of such double issue. Even if the Southern Granite Company had offered to deliver to plaintiff, Strait, a part of such uncontemplated issue of bonds, such an offer would not have been an acceptance or ratification of the proposal by Strait to accept a portion of a smaller issue of bonds. In other words, the contract which plaintiff, Strait, proposed to make was contingent upon an issue by the defendant, Southern Granite Company, of first and second mortgage bonds to an aggregate amount of $50,000, whereas the only issue of bonds ever proposed by the company was the actual issue made to an amount double that proposed by plaintiff, Strait. Such action by the defendant, Southern Granite Company, was far from being an acceptance or ratification of the contract proposed by the agreement contained in 'Exhibit L' between the plaintiff, Strait, and

President S. W. Heath.   There was thus no meeting of the minds of the respective parties to the proposed contract, the plaintiff, Strait, on the one hand, and the defendant, Southern Granite Company, on the other; and, therefore, the proposal contained in said paper never became a contract between the said parties.   In order to constitute a contract, there must be a meeting of the minds of the parties as to all the terms of the agreement.   9 Cyc. 245, 247.

"The situation at the signing of 'Exhibit L' by plaintiff, Strait, and President Heath was that the former thereby proposed to the latter that said plaintiff would agree to mark his mortgage 'satisfied' if the Southern Granite Company would agree, among other things, to issue first and second mortgage bonds to a total amount of $50,000 and would give and deliver to plaintiff, Strait, certain specified amounts of such bonds.   This proposition, however, as we have seen, was never accepted by the Southern Granite Company, and, on the contrary, this company proposed to issue and did issue bonds to double the amount specified in the proposal made by Dr. Strait.   There was, consequently, no meeting of the minds of the parties as between the plaintiff, Strait, and the defendant, Southern Granite Company, no acceptance by the latter of the proposal made by the plaintiff, Strait (which had been attempted to be accepted by President Heath in the name of the company, but ineffectively attempted for the reason that he had no authority to bind the company), and, consequently, no contract between the plaintiff, Strait, and the defendant, Southern Granite Company.

"It must, therefore, be concluded that there was no error by the referee in the holding that the proposed agreement contained in 'Exhibit L,' never having been accepted, ratified or acted upon by the defendant, Southern Granite Company, never became a contract so as to operate as a satisfaction or discharge of the mortgage held by the plaintiff,

Strait, and therefore the same is not a bar to the fore-closure of the said mortgage.

"As to the second question, already mentioned as being presented by the exceptions of the defendants, it must be concluded for the reasons stated by the referee, that the doctrine of estoppel has no application in this case under the facts as here appearing. The action of the plaintiff, Strait, in signing the bonds and mortgages of the Southern Granite Company was merely an official act which he was required and directed to perform by the resolution of the stockholders and directors of the said company. It was not, therefore; the voluntary act of plaintiff, Strait, but was a duty imposed upon him and which he was required to per-form and did perform in his capacity as secretary of the Southern Granite Company. The forms of the bonds and mortgages were prescribed by resolution of the stockholders and directors of the Southern Granite Company and the said plaintiff, Strait, officially was directed and required to sign these bonds and mortgages in that form. His performance of that duty imposed upon him by virtue of his office was not such an act as can be regarded as being voluntary so as to bind him individually by way of estoppel.

"It is the general doctrine of all the cases that where the act of the official of a corporation in signing an instrument in writing is a compulsory official act or performed in obedience to resolutions or requirement of the stockholders, directors or other superior authority, such an act cannot be considered as the voluntary act of such official, and the same, therefore, is not binding upon him individually and cannot operate to estop him from asserting his individual rights. This is the doctrine established by all the authorities and it appears to be the true meaning of the language used by Mr. Justice Woods in *Forbes* v. *Bowman,* 87 S. C. 508. See also the authorities cited by the referee and Bigelow on Estoppel (3d Ed.), page 275.

"There is, moreover, no evidence whatever to show that any of the bondholders was misled to his injury by this official act of the plaintiff, Strait; and it is well settled that no estoppel will arise in such cases unless it be made affirmatively to appear that the person seeking to invoke the doctrine of estoppel has actually been so misled and thereby suffered injury. *Ketchum* v. *Duncan,* 96 U. S. 658; 24 L. C. D. Co. Ed. 868; *Scarborough* v. *Woodley,* 81 S. C. 331; *Bethune* v. *McDonald,* 35 S. C. 93; *Doller* v. *Brubaker,* 91 Am. Dec. 177; *Jewett* v. *Miller,* 61 Am. Dec. 755, and note; *Mills* v. *Graves,* 87 Am. Dec. 316; *Earle* v. *Stevens,* 57 Vt. 474.

"The burden of proof was upon the defendants to show that they were misled to their injury, and, no such proof having been adduced, there is no basis for the plea of estoppel. (See cases just cited.)

"For these reasons, as well as upon the other grounds mentioned by the referee, the finding and conclusion by the referee must be affirmed, that the plea of estoppel cannot avail the defendants in this case.

"These conclusions substantially dispose of the exceptions taken by the defendants to the report of the referee, all of said exceptions being dependent upon the conclusions reached upon the questions already discussed. The defendants' exceptions to the report must, therefore, be overruled.

"There remains to be considered only the exceptions by the plaintiffs to the second supplemental report. As to these exceptions it is to be noted that there was no finding by the referee that any specified amount had been paid out by the receiver of the defendant, Southern Granite Company, or that any ascertained commissions were due him, or that any attorney's fees were due or had been paid by the receiver on account of any legal services rendered. Indeed, no account whatever has been filed by the receiver and there is no showing as to what action, if any, has been taken by him, or as to whether he has done any work or performed

any service entitling him to compensation. The receiver is entitled to reasonable compensation by way of commissions on any moneys which may have come into his hands, and is also entitled to be reimbursed for any moneys which may have been reasonable and necessarily expended by him in the discharge of his duties as such receiver. Such being the case, the exceptions of the plaintiffs to the second supplemental report of the referee are overruled.

"It is therefore ordered and adjudged that the original report and the two supplemental reports of the referee herein be confirmed. * * *"

### Exceptions.

"The defendants, Charlotte Trust Company and Southern Granite Company, excepts to the decree of his Honor, T. S. Sease, herein, upon the follownig grounds:

I. "For that his Honor erred in holding that the execution and subscription of the mortgage bonds of the Granite Company, by T. J. Strait as secretary of said company, which bonds proffered on their face to be secured by first and second mortgages, did not operate as an estoppel upon said Strait individually, so as to preclude him from asserting the priority of his mortgage; whereas, his Honor should have held that said Strait, by participating and co-operating with the stockholders and directors in the proceedings of said company leading up to and resulting in issuance of said mortgage bonds and in subscribing the execution of same and in placing them before the public, is in equity by such conduct estopped from asserting as prior the mortgage of the company held by him.

II. "That his Honor erred in holding that the holders of the mortgage bonds of said company, purporting on their face to be secured by first and second mortgages, could invoke the doctrine of estoppel against said Strait only upon showing affirmatively that they had been misled to their injury by the misrepresentations contained in the

bonds; whereas, he should have held that in equity the doctrine of estoppel is applied to avert injury from resulting to one from the misconduct of another, and that only in legal actions for recovery of damages must the party complaining show that injury has actually resulted, or, in other words, that he has been misled to his injury.

III. "Exception is also taken to the failure of his Honor to rule upon plaintiffs' motion òr request to recommit the case to the referee for further proof that the holders of the mortgage bonds of the company in purchasing same, relied upon the assurances therein contained; that same were secured by first and second mortgages, or if his Honor's decree, taken as a whole, must be regarded as an implied refusal of such motion, exception thereto is hereby taken upon the grounds that such refusal is based upon his errors of law above assigned in exceptions one and two.

IV. "That his Honor erred in not holding that there was a valid tender of said bonds, when said bonds were tendered in 1909, and at the opening of the first reference in this case, at which time there was an actual tender to said Strait, and, upon his refusal to accept same, the said bonds were deposited with the said referee for the benefit of said T. J. Strait.

V. "That his Honor erred in construing the agreement (Exhibit L) to contemplate a total issue of only fifty thousand dollars of bonds, whereas, by a proper construction, the said agreement contemplates an issue of fifty thousand dollars first and second mortgage bonds each and such construction was ratified by T. J. Strait, by his thereafter participating in the actual issuance by said Granite Company of said bonds.

VI. "That his Honor erred in finding that there had been no compliance by the Granite Company with its part of the agreement (Exhibit L), whereas, he should have found that the said T. J. Strait, by actively participating in and affixing his name to the fifty thousand dollar issue of first

mortgage bonds of date May 1st, 1907, which bonds contain a recital that they are secured by a first mortgage upon the property of the company, thereby solemnly recognizing and affirming that the plaintiff's mortgage had ceased to be first lien upon the property."

· · *Messrs. E. J. Blakeney* and *T. J. Kirkland,* for appellants, cite: *The individual and the officer:* 87 S. C. 495; 7 Thomp. on Corp., sec. 8569; 79 Am. Dec. 258; 44 N. W. 915; 1 Mer. Priv. Corp., secs. 573-4; 30 S. W. 319; 41 S. W. 325; 8 Ency. 397; 13 Ency. 552; 48 A. S. R. 905. *Estoppel:* 93 S. W. 805; 14 A. & E. Ann. Cas. 258; 7 Ho. L. Cas. 750; 121 Ill. 186; 22 Pick. 546; 15 Nev. 428; 50 A. S. R. 824; 95 Va. 161; 49 Hem. 58; 13 L. R. A. 270; 1 L. R. A. 523; 7 Ency. 12; 20 Cyc. 37; 35 Cyc. 65; 5 Am. Dec. 532. *Oral variance of a writing:* 83 S. C. 204; 1 Harp. 401.

*Messrs. Ernest Moore* and *W. P. Robinson,* contra, cite: *"First mortgage bond" is a mere nomenclature:* 16 Cyc. 700; Big. on Est. 302; 87 Am. D. 314; 26 N. E. 640; 27 Cyc. 1227; 16 Cyc. 709. *Purchaser must examine title:* 87 Am. D. 317; 8 *Id.* 538; 16 Cyc. 734-40; 17 So. R. 221. *Signing bonds by Strait is only official act:* 87 S. C., 508; Big. 275; 14 Mich. 164; 7 Minn. 487; 11 Am. Dec. 25. *Party invoking estoppel must show injury:* 96 U. S. 659; 81 S. C. 329; 35 S. C. 93; 42 S. C. 348; 57 Vt. 474; 87 Am. D. 316; 61 Am. Dec. 755; Big. 434; 95 Am. D. 129. *And burden is on him to show injury:* 35 S. C. 93; 87 Am. D. 317; 11 Ency. 436; 13 L. R. A. 270; 16 Cyc. 734; 17 So. 221; 23 Fed. R. 849; 128 Ind. 79; 25 Am. St. R. 401; 4 A. & E. Dec. in Eq. 258.

November 5, 1914. The opinion of the Court was delivered by

MR. JUSTICE WATTS. This action was commenced by the respondents as coplaintiffs to foreclose a mortgage for

$15,000.00, securing a note for that amount executed and delivered on May 4th, 1906, by the Southern Granite Company to T. J. Strait covering one thousand and ninety-three acres of land, on the line of Kershaw and Lancaster counties, whereon the Granite Company operated its rock quarry. The mortgage was recorded in both counties, in September, 1906. On May 5th, 1906, the said Strait made a thirty day promissory note to the Charlotte National Bank for three thousand ($3,000) dollars, and assigned as security for the same the aforesaid $15,000, given him by the Granite Company. This note with the collateral mortgage on November 11, 1910, was transferred by the Charlotte National Bank to the Farmers Bank and Trust Company, which as holder of this note joined with Strait to foreclose said mortgage. After issue was joined the cause was referred to Paul Moore, Esq., as special referee, to hear and determine all issues of law and fact. The said referee made his report in favor of the plaintiffs.

Exceptions were duly taken to this report by the Charlotte Trust Co. and Southern Granite Co., and these exceptions were heard by his Honor, Judge Sease, who overruled these exceptions and sustained the report of the referee. From this decree of his Honor, Judge Sease, the appellants appeal. The reports of the special referee and the decree of his Honor should be set out in the report of the case, for a proper understanding of the same.

The first exception is: "For that his Honor erred in holding that the execution and subscription of the mortgage bonds of the Granite Company by T. J. Strait, as secretary of said company, which bonds proffered on their face to be secured by first and second mortgages, did not operate as an estoppel upon said Strait individually, so as to preclude him from asserting the priority of his mortgage; whereas, his Honor should have held that the said Strait, by participating and co-operating with the stockholders and directors in the proceedings of said com-

pany leading up to and resulting in issuance of said mortgage bonds, and in subscribing the execution of same, and in placing them before the public, is in equity by such conduct estopped from asserting as prior the mortgage of the company held by him."

This exception cannot be sustained. The mortgage of Strait was on record in the proper offices, both in Kershaw and Lancaster counties, and the purchasers of these bonds, issued by the exercise of the slightest care, could have ascertained that this mortgage, given for purchase money, was open and unsatisfied. The mere keeping silent in regard to it on the part of Strait cannot operate so as to bind an estoppel against him. It was incumbent on the purchasers of the bonds, or those intending to make loans on mortgages, to examine the title and make an inspection of the record and the presumption is that this was done. *Mills* v. *Graves,* 87 Am. Dec. 317; *Brinckerhoff* v. *Lansing,* 8 Am. Dec. 538.

The alleged misrepresentation consists solely in the bondheadings, "first mortgage bonds" and "second mortgage bonds," such words are mere general recitals by way of nomenclature of the bond issues of the company. Nowhere in the bonds are there any affirmations or statement that there is no other mortgage on the property in question and that no prior mortgage existed in favor of Strait. It is a characterization that the bonds are a certain issue designated "first" and "second," issued by the company and secured by mortgage. There is nowhere in the body of the bond any affirmation that it is the first mortgage or lien on the property in question and a general recital does not furnish a basis for estoppel. Bigelow on Estoppel, 302.

The mere fact that Strait signed the bonds in his official capacity as secretary of the Southern Granite Company in pursuance of a resolution of the stockholders of the company, is not such a voluntary act on his part as would estop him from asserting his individual claim, as his mortgage was on record notice to the whole world, and there is no

evidence that the holders of any of the bonds claim that they relied on any statement, representation, or act of Strait that would estop him other than the mere general recital in the bonds nomenclature of "first" and "second" mortgage. There is no evidence that they examined the records, and no evidence that they took the trouble to ascertain whether the T. J. Strait, who held the mortgage on record in two counties, was the same T. J. Strait who signed the bonds as secretary of the Southern Granite Company. Strait signing the bonds in question under the circumstances he did was an official and not an individual act, and it was not necessary, and in fact he could not, by any authority or power, put in any statement of his individual rights in the premises in any instrument signed by him in the discharge of an official duty, and under the direction of the stockholders so as to operate as an estoppel upon him. Bigelow on Estoppel (3d Ed.) 275; *Wright* v. *DeGraff,* 14 Mich. 164.

The second exception assigns error on the part of the Circuit Judge in holding that the burden was upon the appellants of showing affirmatively that they had been misled to their injury. The referee and Circuit Judge both concluded that the doctrine of estoppel can be invoked by the party setting it up showing that he had been misled to his injury. This conclusion of the referee and Circuit Judge is fully supported by the following authority: Bigelow on Estoppel, 3d Ed. 434; *Bethune* v. *McDonald,* 35 S. C. 93; *Gaston* v. *Brandenburg,* 42 S. C. 348; *Scarborough* v. *Woodley,* 81 S. C. 329; and for this and the reasons in overruling exception one this exception is overruled.

The third exception is overruled for the reason that this was a matter purely within the discretion of the Court, and we see no abuse of discretion on the part of his Honor.

The fourth, fifth and sixth exceptions are overruled for the reason that no exceptions were made to his Honor's

finding of facts and we see nothing erroneous in his conclusions of law as to these matters. The referee and Circuit Judge concurred in their findings of facts and it is incumbent on the appellants to satisfy this Court by the preponderance of the evidence that his Honor, the presiding Judge, erred in his findings of fact, and this they have failed to do. *Lumber Co.* v. *Stallings,* 91 S. C. 476: *Leland* v. *Morrison,* 92 S. C. 470.

Judgment affirmed.

THE CHIEF JUSTICE *concurs.*

MESSRS. JUSTICES HYDRICK *and* FRASER *concur in the result.*