## SARGENT *v.* CORNISH.

Municipal corporations, in this state, may take and hold property in trust for any purpose not foreign to their institution, nor incompatible with the objects of their organization.

A town is capable of receiving by bequest and holding in trust a sum of money, the income of which shall be invested yearly in the purchase and use for display of United States flags.

Although capable of holding such fund for the purpose designated, a town has not the power of raising money by taxation for the purpose of executing the trust.

Where a testator bequeathed a sum of money to a town " on condition that the same be accepted, and invested by said town so as to yield an income of not less than six per centum per annum, which income shall be investedy early in ' United States flags,' to be used within the said town on all proper occasions," with provision for a forfeiture of the legacy in case the town should omit to fulfil the condition—*Held,* that the town might properly expend a reasonable portion of the income of the fund in the purchase and erection of flag-staffs, ropes, halliards, and other necessary paraphernalia.

Jacob Foss, by his will, gave to the town of Cornish the sum of $1,000, for the purposes and on the conditions in said will expressed, as follows:

"25. I give and bequeath to the town of Cornish, N. H., my native place, for the purpose of perpetuating the 'United States flag,' that the stars and stripes of which may remind the inhabitants of their bounden duty to themselves and their fellow-citizens of the whole United States to so act in harmony with right and justice that no occasion will occur to disturb our peace and tranquillity in all coming time, the sum of one thousand dollars, on condition that the same be accepted, and invested by the said town so as to yield an income of not less than six per centum per annum, which income shall be invested yearly in 'United States flags,' to be used within the said town on all proper occasions; and it is my wish that they shall be used often enough, so that not more than two years' purchases shall be on hand at a time. If the said town does not accept of the above named legacy, or should fail to carry out fully the above condition, then I give and bequeath the said sum of one thousand dollars to my late sister Deborah's children, to be divided equally between them, or, if they are deceased, to their legal heirs."

The will was duly proved and allowed. The town voted to accept the legacy, and a trustee was appointed to take charge of the fund and see to its application. The executor of said will paid to said trustee the sum of $940, being the amount due after deducting $60· United States internal revenue tax. This fund was invested immediately by the trustee, at six per cent. interest, which interest has been regularly received, being payable September 14 of each year. On July 1, 1868, said trustee expended, of the income accruing up to that time, $85.59 for flags, including flag-staffs and the necessary ropes and fixtures for operating the same, and the necessary labor pertaining thereto, leaving a balance unexpended, at that time, of $27.21. In 1869 said trustee expended in the same way $81.35 of the income. In 1870 said trustee expended $28.50 for flag, and $34.37 for pole, ropes, and putting up the same; 1871, for flag, $28.80; 1871, for pole, ropes, and labor, $27.10; 1872, paid for flag, $34.25; 1872, paid for fixtures, putting up, and expense of getting, $15.60;—and which flags have been placed in different parts of the town where likely to do the most good. The amount of interest received up to the commencement of the action was $56.40 per year.

The action is *indebitatus assumpsit* on the general counts, and the plaintiffs are the persons who would be entitled to the fund if forfeited by the town's failure to perform the condition of the will.

The questions of law arising on the above case were reserved for the full bench.

*Flanders,* for the plaintiffs.

I. The condition, purpose, and object of the legacy, which the case

finds is not within the scope of the design with which towns are created—raising flag-staffs, making holidays, preparing for 4th of July celebrations, and other jubilees—are wholly foreign to and no part of the duties pertaining to town officers and agents. The defendant town cannot legally accept and execute the trust set up in the will of Jacob Foss. *Trustees* v. *Peaslee,* 15 N. H. 330 ; *Chapin* v. *School District,* 35 N. H. 456.

II. If competent to accept the legacy in trust, the defendants have failed to comply with the condition of the will. One thousand dollars was given " on condition that the same be accepted, and invested by said town so as to yield an income not less than six per centum per annum, which income shall be invested yearly in United States flags." The case finds that sixty dollars of the fund so willed has been used to pay United States revenue tax, and that the larger part of the income of the balance has been invested in lumber, ropes, fixtures, and labor. We contend that such expenditure of the income is contrary to the terms of the will and the clear intention of said testator.

III. The will further provides, that if said town does not accept said legacy, or should fail to carry out fully the above condition, then said sum is given to said testator's sister's children, &c. The plaintiffs are the children referred to. The defendants having failed to comply with the condition of the will, the property becomes vested in the plaintiffs by virtue of the provision last referred to. *Wiggin* v. *Berry,* 22 N. H. 117.

*Cushing,* for the defendants.

I. Corporations may hold property in trust for charitable uses, not inconsistent with the objects of their corporate existence. The purpose declared in the testator's will is patriotic and good. The court cannot undertake to say, judicially, that the means adopted by the testator are not adapted to effect his patriotic purpose. His intention appears to have been specially to educate the rising generation of Cornish to patriotic sentiments and impulses, and it is not a far-fetched interpretation to bring it under the head of an educational charity. There is nothing in the objects to be obtained, or the means of obtaining them, inconsistent with the purposes for which town corporations are established.

II. The gift is on condition that the town shall accept the legacy, and invest it so as to give an income of not less than six per cent.,—which has been done.

III. It should be remarked that towns, though capable of holding property for charitable uses, undoubtedly have not the power of raising money by taxation for the purpose of executing those trusts. Every testator must be presumed to know the law which is to govern his trust ; and this testator must therefore have understood that it was only the net amount, after paying the expenses of administration, which could be accepted by the town. If the testator had intended that the internal

revenue tax should be paid out of other funds, he should have so said in his will by giving the legacy in express terms free of the legacy tax. So, he must be taken to have understood that the town could not lawfully raise money for the purpose of executing the trust, purchasing flag-staffs, ropes, &c. The fair construction of the will, therefore, is, that by the term " flag " the testator intended to express flag-staffs and other incidental expenses.

IV. It appears that in no year has the exact amount of the income been expended. It would probably have been impracticable to bring out the sums expended to exactly the amount of the income. All that can be required is, that the town should, in good faith, substantially execute the trust. We see nothing in the expressions of the will which tends to extend the condition to the expenditure of the money. The condition is for the acceptance and investment, and does not extend beyond. If, however, it were not so, and the expenditure of the money were embraced within the condition, still, all that would be required would be a substantial performance if it were done in good faith. The case of *Wiggin* v. *Berry*, 22 N. H. 114, is cited to show that the plaintiffs, the children of the testator's sister, are the parties entitled to maintain this action. · It is undoubtedly true, as held in that case, that land, not wanted for payment of debts and expenses of administration, ordinarily vests in the devisee, and that the executor has nothing to do with it. This doctrine is elaborately explained in *Drinkwater* v. *Drinkwater*, 4 Mass. 354. We understand the exact contrary to be the law in regard to personal property, the legal title to which vests in the executor, and through whom the remedies in regard to it must be sought. The following cases may be cited as bearing upon various points in the foregoing brief : *Dublin case*, 38 N. H. 459 ; *Chapin* v. *School District*, 35 N. H. 456 ; *Jewett* v. *Smith*, 12 Mass. 309 ; *Lawrence* v. *Wright*, 23 Pick. 128.

FOSTER, J.   Municipal corporations may be the objects of public and private bounty. Legacies of personal property, directly to the corporation for benevolent or public purposes, are valid in law, in the absence of disabling or restraining statutes. Dillon Mun. Corp., sec. 436.

Towns in this state " may purchase and hold real and personal estate for the public uses of the inhabitants." Gen. Stats, ch. 34, sec. 3. Not only may municipal corporations take and hold property in their own right, by direct gift, conveyance, or devise, but such corporations, at least in this country, are capable, unless specially restrained, of taking property, real and personal, in trust, for purposes not foreign to their institution, and not incompatible with the objects of their organization. And equity will compel such corporations to execute any lawful trusts which may be reposed in them. 2 Kent's Com. *279, *280; Dillon Mun. Corp., sec. 437 and 443, and cases cited in notes; Perry on Trusts, secs. 42, 43 ; *Vidal* v. *Girard's Executors*, 2 How. 127 ; *Perin* v. *Carey*, 24 How. 465 ; *Trustees* v. *Peaslee*, 15 N. H. 331 ; *Chapin* v. *School District*, 35 N. H. 445 ; *The Dublin case*, 38 N. H. 459.

In the Girard will case, before cited, Mr. Justice STORY remarks,—"If the purposes of the trust be germane to the objects of the incorporation; if they relate to matters which will promote and perfect those objects; if they tend (as the charter of the city of Philadelphia expresses it) 'to the suppression of vice and immorality, to the advancement of the public health and order, and to the promotion of trade, industry, and happiness,' where is the law to be found which prohibits the corporation from taking the devise upon such trust, in a state where the statutes of mortmain do not exist, the corporation itself having a legal capacity to take the estate as well by devise as otherwise? We know of no authorities which inculcate such a doctrine, or prohibit the execution of such trusts, even though the act of incorporation may have for its main objects mere civil and municipal government, and regulation, and powers. If, for example, the testator by his present will had devised certain estate of the value of $1,000,000 for the purpose of applying the income thereof to supplying the city of Philadelphia with good and wholesome water, for the use of its citizens, from the river Schuylkill, why, although not specifically enumerated among the objects of the charter, would not such a devise, upon such a trust, have been valid, and within the scope of the legitimate purposes of the corporation, and the corporation capable of executing it as trustees?" The learned judge further observes,—"Neither is there any positive objection, in point of law, to a corporation taking property upon a trust not strictly within the scope of the direct purposes of the institution, but collateral to them."

These remarks indicate the views of that eminent jurist that the scope of the purposes of a municipal organization is exceedingly broad and comprehensive. It is manifest that a municipal or other corporation should not be permitted to take and execute trusts for objects "utterly *dehors* the purposes of the incorporation;" but we fail to recognize any reason why its capacity in this respect should be limited to objects technically denominated charities or pious uses, or to religious or educational purposes; or, indeed, why it should be circumscribed by any other limitations than such as should exclude inconsistent, incompatible, and improper objects.

It would seem to be impossible to prescribe in definite terms the almost innumerable objects of a liberal bounty, with which a town might be advantageously and happily endowed, directly or in trust. It would probably be agreed by all, that a town in this state may hold property in trust for educational purposes. And what are they? Not merely the means of instruction in grammar, or mathematics, or the arts and sciences, but all that series of instruction and discipline which is intended to enlighten the understanding, correct the temper, purify the heart, elevate the affections, and to inculcate generous and patriotic sentiments, and to form the manners and habits of rising generations, and so fit them for usefulness in their future stations.

And the means of education are not solely books and printed rules and maxims, but representations and symbols and pageantry, it may

be. And it may be questioned if the youth of the land do not derive more of instruction in the holy duty of patriotism and love of country from bonfires and illuminations and the display of the old flag of our Union, than from books on the science of government or political economy, or commentaries on the constitution.

Generous men endow our towns with funds for the maintenance of soldiers' monuments; and every " decoration day " we place flowers upon soldiers' graves; and, suspended in the capitol, the flags of noble regiments from their tattered folds drop eloquent eulogy for the dead, and lessons from their example for the instruction and emulation of the living; and we do not regard any of these things as foreign to the purposes of, nor inconsistent with, our state or municipal organization or policy.

The purpose declared by the testator was the perpetuation in his native town of the " United States flag," to " remind the inhabitants of their bounden duty, to themselves and their fellow-citizens of the whole United States, to so act in harmony with right and justice that no occasion will occur to disturb our peace and tranquillity in all coming time."

This purpose is certainly patriotic and good. The intention of the testator seems to have been " to educate the rising generation of Cornish to patriotic impulses." The legal status of a charity is not determined by its practical results, which can seldom be foreseen, and " this court cannot say, judicially, that the means adopted by the testator are not adapted to effect his patriotic purpose."

Though not directly within the scope of the more appropriate duties and powers of towns, this bequest and trust, certainly, is not repugnant to the general object of such corporations, and with slight change of phraseology the language of PERLEY, C. J., in the *Dublin case*, may well be applied to the present: " Towns in this state are to be regarded as a coördinate branch of the government, established to advance the general good of the people; and under our constitution no one can entertain a doubt that to maintain [and cherish love for the Union of the states] is an object quite consistent with the general purposes for which towns are created, and that towns have, at least, an indirect interest in promoting [patriotism] within their limits."

Our conclusion is, that the town of Cornish possesses legal capacity to take and·hold the testator's bounty in trust for the purposes declared by his will.

We are of the opinion that the case discloses a practical and substantial compliance, by the town, with the condition, upon the performance of which the vesting in it of the legacy depends.

Since the town, though capable of holding the fund for the purpose designated, has not the power of raising money by taxation for the purpose of executing the trust, it can only make the fund available by appropriating a portion of the income to expenses necessarily incidental to the use, and without which the legacy and the trust must fail.

The testator, knowing the law, and intending, of course, to make a valid bequest, must have also understood and intended (since he provided no additional fund for the purpose) that the government tax should be paid out of the fund, and that a portion of its income should be appropriated to the furnishing of the indispensable appurtenances and paraphernalia without which the flags could not be displayed. If the bequest here is a charity, or analogous thereto, it must receive that liberal construction which courts, whether of law or of equity, employ in such cases—Snell's Equity 90; and perhaps, if it were necessary in order to support the testator's design, the doctrine of *cy pres* might be put in requisition. At any rate, the will is to have a reasonable and not necessarily an exactly literal construction, to effectuate the manifest intention of the testator.

With these views, it becomes unnecessary to consider the question whether the plaintiffs, in their own names, and without the intervention of the executor, could maintain the action, if any cause of action belonged to them. Upon this question, the remarks of SHAW, C. J., in *Lawrence* v. *Wright*, 23 Pick. 128, would seem to be pertinent: " The remedy of any party, in such circumstances, is very simple,—that of taking out letters of administration; and the law arms the administrator with ample powers to obtain the property, in whose custody soever it may be placed. If the property is not of sufficient value and importance to be the subject of an administration, it may, at least, be doubtful whether it is worth litigating about in any other form."

*Case discharged.*