## CROKER v. TOWN OF BEAUFORT.

PUBLIC EASEMENT—ALLEYWAY—ADVERSE POSSESSION—INJUNCTION.— Where a strip of land appears on a map of a town in 1820 as an alleyway, and again on a map of same by United States direct tax commissioners between 1861–5 as an alley, but appeared on a copy of a copy of this map as a lot, for which copy the town was not shown to be responsible, and had been enclosed by fence since 1867, and conveyed by a party who had it enclosed for more than ten years, but no houses had been erected thereon, and it had not been continuously cultivated, the town is not estopped from claiming the strip as an alleyway, and preventing the erection of a house thereon by such grantee.

Before TOWNSEND, J., Beaufort, July, 1894. Reversed.

Action by Daniel W. Croker against the Town Council of Beaufort, for a perpetual injunction, to restrain them from interfering with his erection of a house on a lot of land in the said town, claimed by the town as an alleyway.

The Circuit decree is as follows:

This action is for injunction against defendants for interfering with plaintiff in erecting a house on what the plaintiff calls a lot; the defendants claim that it is an alley.

This case was heard first by Judge Norton. There was a demurrer to the complaint, which was overruled, and there was a decree for plaintiff on the ground of adverse possession and non-user. The defendants appealed, and the Supreme Court (37 S. C., 337,) reversed the decree below, except as to the demurrer; but intimated that while the plaintiff could not acquire a title to an alley or public street by adverse possession and non-user, yet circumstances might arise in connection with either that would work an estoppel against the public. The question of estoppel had not been in the appeal, and the Supreme Court did not consider it, and the case was heard again by me at Beaufort, at the May term, on the same testimony on which it was heard by Judge Norton.

It appears from the testimony that as far back as 1825 there was an old plat of the town of Beaufort on record which represented the land in dispute as an alley; that during the war the United States direct tax commissioners made a new map of said town, making some changes in the mode of designating the lots; that the town then ignored the old plat and adopted the new one, but, so far as appears, did not have it recorded; and in 1884 or 1885 the marshal of the town lost the certified copy thereof which it had for its use, and since that has had neither the original nor a certified copy. When the plaintiff in 1890, by his attorney, W. H. Townsend, Esq., examined the title to said property, with the view of purchasing it, he could get no plat from the town nor from any source, it seems, except a copy of a

certified copy of the United States direct tax commissioners' plat, which copy had been made by Mr. Talbird in 1879, from the certified copy then in the possession of the town. From this copy of a certified copy, which it appears was the only information that could there be obtained that was worth anything, the plaintiff's attorney drew the deed from Mrs. Martha A. Barnwell to the plaintiff. This copy of a certified copy is in evidence as exhibit B, and on it the property in dispute is marked "F," just as other lots are marked, and has also the number 30. This shows the conduct of the town officers in regard to the plat of the town.

Next, as to the land itself. It nowhere appears that the town ever exercised any authority over it until their interference with the plaintiff in October, 1890, which made the subject matter of this action. On the contrary, the town authorities allowed the land to be enclosed for more than a quarter of a century; to be used as a garden; to have a house (kitchen) built upon it, and in all respects to be treated as private property. I, therefore, find as matter of fact:

First. That there was ten years adverse, peaceable, and quiet possession of said land by the plaintiff's grantor, and twenty years non-use thereof by the said town and the public at large immediately preceding the execution of the deed from Mrs. M. A. Barnwell to plaintiff.

Second. That the town officers had, at the time of the execution of said deed, no plat on record showing the recognized division of the town into lots and streets and alleys; nor had said officers such a plat in their possession, having lost the one they did have in 1884 or 1885.

Third. That the plaintiff, after such investigation as he was enabled to make, under the circumstances, as to the title to said land, purchased the same, and put valuable improvement thereon, without any knowledge of any claim thereto by the said town or by the public at large.

Fourth. That in October, 1891, after the plaintiff had commenced building upon said land, and had spent a considerable amount of money thereon, the officers of said town,

the defendants herein, directed their officers to stop said work and to remove the material therefrom, and to open the same as a public alley; and that said officers were about to execute said order—and did stop plaintiff's workmen—when this action was instituted, asking for relief.

I conclude, as a matter of law, that the officers of said town are estopped from in any way interfering with the plaintiff in the erection of said building, and it is so ordered, adjudged, and decreed. It is further ordered, that the plaintiff have leave to apply at the foot of this judgment for any orders necessary to make it effectual.

From this judgment the defendant appeals on the following exceptions:

I. Because the decree of the Circuit Judge is without evidence to support it.

II. Because the findings of fact by the Circuit Judge are unsupported by the evidence.

III. Because the findings of fact by the Circuit Judge are contrary to the evidence.

IV. Because the Circuit Judge erred in finding as matter of fact that there had been ten years adverse possession by plaintiff's grantor, M. A. Barnwell, and twenty years non-user by the town and the public.

V. Because there is no evidence that Martha A. Barnwell ever claimed by word or act any right to the alleyway designated as "Lot 'F' of plaintiff's deed," whether by paper title or possession.

VI. Because there was no evidence that Martha A. Barnwell ever fenced in the alleyway, or that any buildings were ever on said alleyway, and that the Circuit Judge erred in finding the contrary.

VII. Because there is no evidence that Martha A. Barnwell held, or claimed to hold, the said alleyway adversely, or ever exercised any act of ownership over said alleyway, or act showing an intention to hold it adversely, and his Honor erred in finding that her possession was adverse.

VIII. Because the evidence in the case did not establish adverse possession in Martha A. Barnwell or any one else.

IX. Because the Circuit Judge erred in finding as fact that at the time of the execution of plaintiff's deed, the town officers had no plat on record showing the recognized division of the town into lots and streets and alleys, and had no such plat in their possession.

X. Because the Circuit Judge erred in finding as fact that plaintiff made such investigation as he was able as to the title of said premises and put valuable improvement thereon, without knowledge of any claim by the town or public at large.

XI. Because the Circuit Judge erred in finding as fact that plaintiff had spent a considerable amount of money upon said land.

XII. Because the Circuit Judge erred in finding as matter of law that the defendants are estopped from interfering with the plaintiff in the erection of his building on said land, and in so deciding.

XIII. Because no acts or circumstances were testified to entitling plaintiff to equitable relief.

XIV. Because there was an entire absence of any acts of commission or omission on the part of defendants which would work an estoppel against them.

XV. Because there was no evidence that plaintiff was misled by any acts, or omission to act, on the part of the defendants.

XVI. Because the evidence showed that plaintiff made no effort to ascertain the title to the disputed premises before buying.

XVII. Because there was no evidence that plaintiff was induced to purchase by any act or word of defendants.

XVIII. Because plaintiff could have ascertained that the premises in dispute were claimed as an alley of the town, had he chosen to investigate the title.

XIX. Because there was no evidence of facts and circumstances to warrant the decree.

XX. Because if the facts found by the Circuit Judge

18—45

actually existed, they furnished no ground for estoppel against the defendants.

*Mr. W. J. Verdier*, for appellant.

*Messrs. Elliott & Elliott*, contra.

Oct. 1, 1895. The opinion of the Court was delivered by

MR. JUSTICE POPE. This action has been before this Court once before, and our decision on the first appeal will be found 37 S. C., 327. The cause came on for trial before his Honor, Judge Townsend, at summer, 1894, term of the Court of Common Pleas for Beaufort County, in this State, and by his decree the plaintiff was accorded all the relief he sought. From this decree the defendants now appeal on twenty grounds. These grounds of appeal, together with the Circuit decree will be reported.

Briefly stated, the plaintiff, by his action, sought a perpetual injunction against the Town Council of Beaufort, its successors in office, and agents and servants, by which they shall be restrained from any and all interference under a claim of ownership of a certain strip of land, thirty feet wide, lying between lots designated as "C" and "G" on the certified copy of United States direct tax commissioners' plat of the town of Beaufort, S. C., claiming that he had bought such strip of land from Miss Martha A. Barnwell on the 4th day of August, 1890; and just after he had begun to improve the same by attempting to build a small dwelling thereon, he was prevented from doing so by the defendants, as the town council of Beaufort, alleging as their justification for such interference, that said strip of land was an alleyway of said town of Beaufort, and had been so owned by the public since prior to the year 1820.

Judge Norton, who first heard the cause, had decided in favor of the plaintiff, on the ground that Miss Martha A. Barnwell had held the land adversely to the public more than ten years before her conveyance was made to the plaintiff, and also on the further ground that twenty years

non-user presumes the abandonment of an easement, such ss a right of way. On these two points, when the cause was in this Court on the first appeal, Mr. Chief Justice McIver, as the organ of the Court, announced the rule thus clearly: "We think, therefore, that mere adverse possession for the statutory period of a street or alley in a town, which is a public highway, cannot confer a title. But when such possession is accompanied with other circumstances, which would render it inequitable that the public should assert its rights to regain possession; then, upon the principle of estoppel, a party may be protected against the assertion of right by the public, in order to prevent manifest wrong and injustice. For example, when a party, either under an honest conviction of right, has taken possession of a portion of one of the streets or alleys of the town, and expended his money in erecting buildings thereon, without interference on the part of the public, these, or perhaps other circumstances connected with adverse possession for the statutory period, may afford good ground for estoppel. Upon the same principle, we do not think that mere non-user of a street or alley of a town for the period of twenty years will amount to such an abandonment as would destroy the rights of the public. It seems to us, therefore, that the Circuit Judge erred in holding otherwise; and, for this reason, the case must go back for a new trial, upon the principle herein announced."

It must be evident that the purpose of this Court in ordering a new trial, was to permit the plaintiff, if he saw proper, to raise the question of estoppel, by reason of the non-action, &c., of the town of Beaufort touching this alleyway. That the parties to the action offered no new testimony at the second hearing, is a matter of no moment, except to the parties to the contention. Parties to an action in a court of justice are never forced to introduce testimony. It is a matter of their own volition, and, we may add, of their own responsibility. This being a cause on the equity side of the Court, it is made our duty to canvass the facts as well as the law, in response to appellant's exceptions.

The real question here is, has the plaintiff, or the grantors through whom he claims, used this strip of land, thirty feet wide, by the sufferance of the public for such a time, and in such ways, as ought to shut off the defendants from the assertion that the plaintiff ought not to be allowed to claim this alleyway as his own. If so, the defendants should be enjoined, as prayed for in the complaint; if not, the complaint should be dismissed as wanting in merit.

First. Was there anything done by the public, represented in this instance by the town council of Beaufort, to induce Crocker to take title to this alleyway? First, it is admitted that the first plat of the town of Beaufort, which was duly recorded, showed that this strip of land was thereon marked as an alleyway. While this is true, it is contended that United States direct tax commissioners made a plat of this town of Beaufort during the war—that is, between the years 1861 and 1865. On this map, however, it is shown that this was an alleyway. Plaintiff suggests that one of his attorneys, when he was about to prepare the deed from Miss Barnwell to the plaintiff, applied to the town authorities for their map of the town, but it was misplaced; he then sought out Thomas Talbird, Esq., of the Beaufort bar, and found that he himself had copied a map of the town from one in the possession of some officer of the town council of Beaufort, and that on this copy of a copy, this narrow strip of land was designated by the letter F, and he drew the deed to include this strip of land. This attorney admitted he had seen a copy of the map of the town of Beaufort in the office of the collector of customs at Beaufort, and he sought it. It was also out of place. Now we are unable to see how the town of Beaufort can be held accountable, so far as its rights to this alleyway are concerned, for any copy of a copy of a map. There is not pretended to be any evidence that the copy from which Mr. Talbird made his copy was recognized by the town of Beaufort as a correct map. No word was spoken, nor act done, which in any wise bound the town of Beaufort to an acceptance by it of the

copy of a map from which Mr. Talbird made his copy. All these things being true, we are not able to see any elements of estoppel to the town of Beaufort to deny that the deed from Miss Barnwell to the plaintiff conveyed this strip of land.

Second. Was there such adverse user of this strip of land by the plaintiff and his grantors, that the town of Beaufort should not be allowed now to assert that this strip of land is an alleyway of said town, so that the plaintiff cannot successfully hold the same as his own? (a) We cannot agree with the Circuit Judge, that houses had been built on this land. The testimony does not so declare. (b) We cannot agree with him, that it was used as a garden. By far the clearest description of this alleyway and its use was given by the late Mr. Nathaniel Heyward. As it might have been expected, by any one who was acquainted with his life, his testimony was fair and frank. Counsel for plaintiff seizes hold of an expression used by Mr. Heyward in his testimony, when he referred to his having given permission to the carriage maker, Mr. Rickenbacker, to let a door from his carriage factory swing partly across said alleyway, and bases a claim, that such testimony clearly shows that the alleyway was Mr. Heyward's private property. But such is not his testimony, as we construe it. This witness always speaks of this alleyway as used by the public. So far as his consent to Mr. Rickenbacker's door being allowed to open on the alleyway, it was only an expression by Mr. Heyward, that he himself would not object; he did not claim to bind the public. (c) The fences across the alleyway since 1867 merely indicate a privilege to the adjacent landowners, which arose, no doubt, from a desire to mitigate the terrible results of the late war, which made it quite expensive to run two fences on said alleyway. Hence one was run, and the short fence across the alleyway. (d) So far as plaintiff's attempt to build thereon is concerned, the testimony fails to disclose any great damage to him. He says his material in all, and the work on it, is worth $150, but

then he is careful to say that the only injury would be to the morticed work by the weather. He admits that no one objects to his removal of his lumber and other material to his Woodbine Cottage lot, adjoining the alleyway. In view of these matters, and many others disclosed in the "Case," we hold that the Circuit Judge was in error, and his decree must be reversed. We can see no need for further litigation.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and that the action be remanded to the Circuit 'Court, with directions to that Court to pronounce a decree dismissing the complaint.