### 11524

#### GRADY *ET AL.* v. CITY OF GREENVILLE *ET AL.*

##### (123 S. E., 495)

1. MUNICIPAL CORPORATIONS—REMOVAL OF MONUMENT FROM STREET NOT RESTRAINED AS BREACH OF TRUST.—City's removal of a monument from center of congested street, and its reërection on another site, *held* not such a breach of council's fiduciary duty as trustees thereof as to justify an injunction restraining such removal.

2. COUNTIES—PLAINTIFFS HELD NOT TO SUSTAIN BURDEN OF PROVING THAT REMOVAL AND REERECTION OF MONUMENT WOULD CONSTITUTE TRESPASS ON COUNTY PROPERTY.—Plaintiffs *held* not to sustain burden of proving that removal and reërection of monument at "a point in front of the county courthouse" would constitute an unlawful trespass on county property, to plaintiffs' injury as county taxpayers.

3. DEDICATION—"DEDICATION" DEFINED.—Dedication is the giving of land, or an easement for public use, by owner. In its effect on owner's rights, there is no essential difference between a dedication and a grant.

4. DEDICATION—COMPLETED DEDICATION IS IRREVOCABLE.—A completed dedication is irrevocable.

5. DEDICATION—EVIDENCE HELD NOT TO SHOW THAT CITY OR ABUTTING OWNERS HAD CAPACITY TO DEDICATE PART OF STREET FOR MONUMENT.—Evidence *held* not to show that city or abutting owners had capacity to dedicate land, used for street purposes, for erection of a monument.

---

Note: On power of municipality to accept and administer trust for erection and maintenance of monument, see note in 10 A. L. R., 1378.

On right to place monument or market in highway, see note in 16 A. L. R., 927.

6. ESTOPPEL—CITY NOT ESTOPPED FROM REMOVING MONUMENT ERECTED IN STREET.—City *held* not estopped from removing a monument erected, pursuant to city's permission, on land used for street purposes.

7. DEDICATION—INTENT TO PERMANENTLY ABANDON LAND MUST BE CLEAR AND UNEQUIVOCALLY MANIFESTED.—Intent to dedicate must be clearly and unequivocally manifested, and it is of essence of dedication that owner has consented permanently to abandon land.

8. DEDICATION—INTENT TO DEDICATE NOT PRESUMED, WHERE USER IS PERMISSIVE.—Where user is permissive, intent to dedicate will not be presumed.

9. MUNICIPAL CORPORATIONS—POWER OVER STREETS LEGISLATIVE FUNCTION.—Under Civ. Code 1922, § 4570, city council is vested with full and exclusive power to control and direct use of land for street purposes, and exercise of that power is purely a legislative function.

10. MUNICIPAL CORPORATIONS—MUNICIPALITY MAY NOT ALIEN STREETS. —A municipality, acting through its legislative body, has no power to alien streets, or by contract, ordinance, or by-laws to cede away, limit, or control its legislative or governmental authority over streets.

11. ADVERSE POSSESSION—ADVERSE POSSESSION OF STREET CONFERS NO TITLE.—Mere adverse possession of a street or alley for statutory period confers no title.

12. ESTOPPEL—THAT PARTY HAS BEEN MISLED, TO HIS INJURY, HELD ESSENTIAL ELEMENT.—It is of the essence of equitable estoppel that party entitled to invoke principle shall have been misled, to his injury.

13. MUNICIPAL CORPORATIONS—COURTS WILL NOT INTERFERE WITH CONTROL OF STREETS.—Generally Courts will not interfere with exercise of discretionary powers as to control of streets by municipal body, except in case of fraud or clear abuse of power.

14. CHARITIES—MUNICIPALITY MAY BE TRUSTEE FOR CHARITABLE TRUST. —A municipal corporation may become trustee of a charitable trust.

15. MUNICIPAL CORPORATIONS—MUNICIPALITY MAY ACCEPT TRUST TO MAINTAIN MONUMENT.—Erection and maintenance of a monument is a purpose for which a municipality is competent to accept and administer a trust.

16. MUNICIPAL CORPORATIONS—POWERS AS TRUSTEE SAME AS PRIVATE TRUSTEE.—The test to be applied to council's exercise of their discretionary powers, under a trust for erection and maintenance of a monument, is the same as though a corporation or private individuals were trustees.

Before MAULDIN, J., Greenville, July, 1923. Reversed and complaint dismissed.

Action by Maj. W. G. Grady and others individually and as taxpayers and ex-Confederate soldiers against the City of Greenville and the City Council of Greenville. From a judgment granting a permanent injunction, defendant appeals.

*Messrs. E. M. Blythe* and *Haynsworth & Haynsworth,* for appellant, cite: *Authority of city council:* Code 1922, Sec. 4570, 4550. *City streets:* 2 Ell. Roads & Streets, Sec. 828, 840; 18 N. E., 415; 110 N. W., 1121; 165 Pac., 1121; 112 Ill. App., 343; Dillon Mun. Corp., Sec. 1180, pp. 1874-5; 117 A. S. R., 370; 9 Am. Rep., 80; 208 U. S., 583; 75 S. C., 232; 37 S. C., 327; Act of 1885; 19 Stat. 106, Sec. 30. *Alienation of streets:* 188 S. W., 689; 107 N. E., 864. *Grants constructel in favor of the public:* 126 Pac., 875; 96 U. S., 63; 167 U. S., 88. *Continuance of permission:* 107 S. C., 397. *Estoppel:* 13 So., 289; 42 S. C., 348; 2 Pom. Eq. Juris., Sec. 805, 813; 57 N. E., 246; 45 S. C., 269; 56 F., 894; 57 S. C., 507; 96 S. C., 106; 81 S. C., 329; 42 S. C., 348; 97 S. C., 116. *Discretion of City Council:* Code 1922. Sec. 4570; 110 N. W., 1121; 194 U. S., 618; 105 Pac., 44; 4 Pom. Eq., Sec. 1765; 1 High Injunc., Sec. 593; 123 S. C., 272. *Condemnation:* U. S., Sup. Ct. Rep., 940 (b). *Plaintiffs have no cause of action:* High Injunc. (2nd Ed.), 816; 56 W. Va., 141; 19 R. C. L., 1164; 30 L. R. A., 747; 48 S. C., 553; 68 S. C., 489. *Dedication:* 9 A. & E., Enc., 21, 77; 18 C. J., 42, 127; 32 N. E., 1017; 107 S. C., 39. *Powers of municipality:* 3 Dillon Mun. Corp., Sec. 1188. *User:* 18 C. J., 94; 8 R. C. L., 892. Tiffany Real Prop., Sec. 482; 107 S. C., 397. *Original location of monument unsuitable:* 68 S. C., 489.

*Messrs. Mauldin & Love* and *Bonham, Price & Poag,* for respondent, cite: *Cause of action:* 2nd Pet., 566; 68 S. C., 489; 7 Cyc., 720; 18 C. I., 132. *Estoppel:* 197 U.

S., 200; 69 Pa., 586; 43 U. S., 127; 164 Poc., 179; 161
Pac., 1024; 160 N. W., 691; 82 N. E., 286; 89 N. E.,
800; Note 46 L. R. A. (N. S.), 211; 37 S. C., 334; 57
S. C., 518; 154 U. S., 225; 35 L. R. A. (N. S.), 603; U. S.
Rep., Vol. 8, p. 614. *Authority of City Council:* 19 L. Ed,
984; 19 Am. St. Rep., 658.

June 9, 1924.

The opinion of the Court was delivered by MR. JUSTICE
MARION.

In the year 1891, the Ladies' Memorial Association
of Greenville County presented to the mayor and
aldermen of the City of Greenville a petition, show-
ing, in substance, "that, after years of patient toil," their
"effort to erect a suitable monument to the Confederate
dead of Greenville County" was "about to be crowned with
success"; that, in the opinion of petitioner, the most ap-
propriate place for the location of the monument was a
designated point on Main Street in said city, and that they
desired to place the monument there, "in the center of the
street"; and praying that "permission be granted them to
locate this monument at the point indicated," etc. The
prayer of the petition was unanimously granted by the City
Council. Pursuant to that permission, in 1892, the monu-
ment was erected in the center of Main Street, and un-
veiled with appropriate public ceremonies. In June, 1922,
the City Council of the City of Greenville, by resolution
duly adopted, ordained "that the city move the monu-
ment to a point in front of the county courthouse, provided
the property owners on North Main Street, between the
Ottaray Hotel and the cemetery would deed a strip of land
12 to 15 feet wide, to widen North Main Street." In
October, 1922, the city commenced the work of taking
down the monument for the purpose of reërecting it at the
new location. Thereupon, this suit was brought to restrain
the city. An injunction *pendente lite* was granted by Special
Judge C. M. Efird. The cause was thereafter heard by

Hon. T. J. Mauldin, presiding Judge, who granted a permanent injunction. From this decree of Judge Mauldin, the City of Greenville appeals.

The plaintiffs predicate the right to injunctive relief upon the following grounds: (1) That they are ex-Confederate soldiers and taxpayers of the City of Greenville, and of the County of Greenville, who have such an interest, differing in kind from that of the general public, as entitles them to maintain the action; (2) that the city, having permitted the erection of said monument, and having allowed it to stand upon its present site, in the street, for a period of more than 30 years, is now estopped to remove it; (3) that at the time of the erection of the monument by the Ladies' Memorial Association, about 30 years ago "the City of Greenville dedicated and commemorated" the plat of land, about 30 feet square, in the center of North Main Street "as a place where said monument should stand," and that the public generally, and especially Confederate soldiers and the children of Confederate soldiers, have acquired an irrevocable right to said land for the purpose of its continued use as a site for the said monument; and (4) that the reërection of the monument in front of the county courthouse building would be an unauthorized trespass upon the property of the county, would destroy the architectural symmetry of the courthouse building, would interfere with the purpose for which said building was erected, and would depreciate the value of the county's property, to the irreparable damage of the plaintiffs, as taxpayers of Greenville County. The foregoing contentions will be considered in inverse order.

As to the contention that the proposed reërection will damage county property, to the injury of plaintiffs as county taxpayers, it appears to have been assumed, as a fact, by Special Judge Efird, in granting the preliminary injunction, that the proposed new location of the monument was on county property, "conveyed to the county for the pur-

pose of the erection thereon of a county courthouse." He thereupon concluded, as a matter of law, "that the location of the monument on county property could not be lawfully done" without the permission of the county authorities, acting under express legislative authority. That finding and conclusion were adopted by Judge Mauldin in the decree granting the permanent injunction. Without passing upon the validity of the legal conclusion reached upon the facts assumed, we are clearly of the opinion that the record discloses no such factual showing as entitles the plaintiffs, as taxpayers of Greevnille County, to enjoin the reërection of this monument at "a point in front of the county courthouse," as contemplated by the City Council.

Upon the issue of fact as to whether or not the proposed reërection would be on county property, no such definite proof, either as to the exact location of the new site, or as to the title to and control of the land at this point, was adduced by plaintiffs as would enable the Court to determine that issue in the affirmative. It is the contention of the defendant city that "the proposed location was a part of the public streets of the City of Greenville" and that the evidence adduced conclusively so establishes. Plats, introduced in evidence by the defendant city, tend to show that the space in front of the courthouse is held by the municipality, under the original dedication by the owners of the fee, for street purposes. But whether that be so or not, in the state of the present record, it is unnecessary, and would not be proper, to decide.

All that it is necessary for us here to determine is that the plaintiffs have not satisfactorily sustained the burden of proving that the proposed reërection at "a point in front of the county courthouse" would constitute an unlawful trespass upon county property, to the injury of plaintiffs as county taxpayers. In the absence of such affirmative showing, the plaintiffs, clearly, were not entitled to injunctive relief upon that ground.

May the injunction be sustained upon the legal theory of dedication? Appellants suggest that this point was not passed upon by the Circuit Court, is not raised by the exceptions, and was not noticed as an additional sustaining ground by the respondents. While not specifically passed upon by the Circuit Judge, it is definitely alleged in the complaint that there was a dedication by the city, and it does not clearly appear that the Circuit Judge's conclusion was not predicated—to some extent, at least—upon the validity of that theory. We will not, therefore, decline to consider it.

. Dedication is the giving of land or an easement for 3, 4 the use of the public by the owner. 9 A. & E. Enc. (2d Ed.), 21. That "a dedication, whenever completed, is irrevocable" is well settled. 9 A. & E. Ency. (2d Ed.), 77. Hence:

"If a dedication is made for a specific or defined purpose, neither the Legislature, a municipality, or its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether such use be public or private, and whether the dedication is a common-law or a statutory dedication, and this rule is not affected by the fact that the changed use may be advantageous to the public." 18 C. J., 127; *McCormac v. Evans,* 107 S. C., 39, 42; 92 S. E., 19.

Concretely, the contention of plaintiffs is that this particular spot of ground, of approximately 30 feet square, in the center of Main Street, was solemnly dedicated by the city to the specific purpose of serving as a site for the monument erected as a perpetual memorial to the heroism of the Confederate dead.

If there was such dedication in the legal sense, it must have been made by one competent to make it. In its effect upon the landowner's rights, there is no essential difference between a dedication and a grant. The law, as to capacity to dedicate, is thus stated in 18 C. J., p. 42:

"There seems to be no valid reason why the same rules which apply to grants should not apply to dedications, so that, as a general rule, it may be said that no dedication can be established as the act of a person incapable of making a grant."

Applying that rule here, no evidence has been adduced tending to establish that the city ever had capacity to grant the land now in question. It does not appear that the city is the owner of the fee in the land upon which Main Street is located. Where a state or municipality is the owner in fee of lands, held in a *quasi* private, or proprietary, capacity, there would seem to be no doubt of its capacity to make a dedication, where the objects of the dedication are not inconsistent with the public purposes for which the lands are held. 9 A. & E. Enc. (2d Ed.), 32. But in the case at bar, not only is there no evidence that the soil of Main Street upon which the monument stands is, or was ever, owned in fee by the city, but it is conceded by plaintiffs that, at the time of the erection of the monument, the land was, and had for many years been, devoted to and used for street purposes. There was evidence in the form of a plat tending to show that the land upon which Main Street is situated was dedicated as a street, by the owner of the soil, in the latter part of the eighteenth century. Hence it is the contention of the city that it was precluded from making a dedication of this land, not only by reason of the fact that it did not own the fee which would enable it to dispose of it in perpetuity, but because it held the land in a governmental capacity for the sole purpose of effectuating the specific object for which it had already been dedicated by the owners of the soil, viz., as a public thoroughfare or street. If, at the time of the erection of the monument, the ground on which it was placed had already been dedicated, by the owners of the fee, for street purposes, and if the land occupied by the monument was devoted to a purpose inconsistent with the

primary and essential objects to which the soil had already been dedicated, it is obvious, under the well-settled rule above adverted to, that the city would have no power to authorize such different use. On the other hand, if this use of a part of the street for the purposes of the monument was a use not inconsistent with the street purposes for which the land was dedicated by the owners, then the permission granted by the city to use the street as a site for the monument was an act clearly referable to its governmental power to control the land for street purposes, and not to a proprietary power—which it did not have—to grant or dedicate the soil for a specific memorial purpose. In no view do we think it has been made to appear that the city had legal capacity to effect a dedication.

But if there was no dedication by the city, for the reason that it had no capacity to dedicate, then respondents suggest that there was a dedication by the only other persons who were competent to make such dedication, viz., the abutting owners of the fee in the land. But if the land had already been dedicated by the owners to the public, for street purposes, as appears to be undisputed, it would seem obvious that the capacity of the owners to dedicate was exhausted and that there could be no rededication of the land, either for the same or for different purposes—certainly, until after there had been such abandonment, misuser, or diversion, under the original dedication, as would work a forfeiture of the public rights in the land, and a reversion to the dedicator, or his heirs. It is not contended here, as we understand, that the erection and maintenance of the monument caused a reversion of the land, and that, after such reversion, the owners of the fee rededicated it for the purposes of the monument. Hence, a discussion of that theory, which in any view in its application to the facts of this case we regard as untenable, is deemed unnecessary. See 18 C. J., 129, § 171. *Tompkins v. Hodgson,* 2 Hun. (N. Y.), 146. *Sears v. Hopley,* 103 Ohio St., 46; 132

N. E., 25; 16 A. L. R., 925. *Braham v. Meridian,* 111 Miss., 30; 71 South., 170. *Parson v. Van Wyck,* 56 App. Div., 329; 67 N. Y. Supp., 1054. *Hoyt v. Gleason* (C. C.), 65 Fed., 685. *Hartford v. Maslen,* 76 Conn., 599; 57 Atl., 740; 8 R. C. L., 892, § 16.

This brings us to a consideration of the next ground upon which respondents rely to sustain the judgment of the Circuit Court—that the city is now estopped to assert or exercise any right to remove, or change the location of, the monument. The doctrine of estoppel is first sought to be applied in this aspect of the case: That even if there was not a technical dedication, for want of legal capacity on the part of the city to dedicate, there was, in fact, such an attempted dedication as should now be held equitably to estop the city from denying its authority. But the validity of the postulate that, if the city had had capacity to dedicate, its action in the premises would have amounted to a dedication, is open to serious question.

It is of the essence of a dedication that the owner has consented, permanently to abandon the land and, whatever the nature of the acts relied on to create a dedication, the intention to dedicate must be clearly and unequivocally manifested. 18 C. J., 43, § 16; Id., 52, § 33. This monument was erected in a street, pursuant to "permission" prayed for by the Ladies' Memorial Association, and expressly given by the city council. Where a user is permissive, an intent to dedicate will not be presumed. 18 C. J., 94. Or, in the language of a reputable text-writer:

"If the user is not of right, but is based upon a license or permission given to individuals, or to a class of individuals, the owner's acquiescence therein can, obviously, not support an inference of dedication." Tiffany, Real Property, § 482.

See *Williamson v. Abbott,* 107 S. C., 397; 93 S. E., 15.

Since the right, here bestowed, to use the street was expressly permissive, even if the authority to dedicate had been

present, there appears to be no sufficient basis for a conclusion that there was, in fact, such an attempt, or assumption of authority, to dedicate as would support an estoppel.

But, whether there was any attempt, or assumption of authority, on the part of the city, to make a dedication of the land or not, respondents contend, in the second place, that the conduct of the city in permitting the monument to be erected upon the street, unveiled with solemn public ceremonies, and dedicated by the builders to the memory of the Confederate dead, and thereafter in permitting the monument to stand on the site selected, for a period of more than 30 years, is a sufficient basis of fact to support an estoppel.   In the application of the doctrine of estoppel here it is to be borne in mind that we are now concerned with the plat of land occupied by the monument and not with the monument itself.   The question is whether the city is now equitably estopped to assert its right to use the land for other purposes, or other street purposes, and, in the assertion of that right, to remove the monument to another site. At the time of the erection of the monument, the land upon which it was placed was held by the city, in trust, for street purposes.

The city council was then, and is now, vested with full and exclusive power to control and direct the use of the land for street purposes.   Charter, 19 Stat, 106; Section 4570, Code 1922.   The exercise of that power is purely a legislative function. *State v. Park Com'rs.,* 100 Minn., 150; 110 N. W., 1121; 9 L. R. A. (N. S.), 1045.   That a municipality, acting through its legislative body, has no power to alien the streets of a town, or by contract, ordinance, or by-law, to cede away, limit, or control its legislative or governmental authority over streets, or otherwise to disable itself from performing its public duties, is elementary. *Wabash R. R. Co. v. Defiance,* 167 U. S., 88, 97; 17 Sup. Ct., 748; 42 L. Ed., 87. *Spencer v. Mahon,*

75 S. C., 232; 55 S. E., 321. *Crocker v. Collins,* 37 S. C., 327; 15 S. E., 951, 34 Am. St. Rep., 752.

Mere adverse possession, for the statutory period, of a street or alley in a town can confer no title. *Crocker v. Collins, supra.* Hence, the application of the doctrine of equitable estoppel to cases involving the streets of a municipality is, on principle, so doubtful that Courts and text-writers agree that the case in which it may be invoked should be exceptional in character. Dillon on Municipal Corp., § 667; Elliott on Roads and Streets, ——; *Webb v. Demopolis,* 95 Ala., 116; 13 South, 289; 21 L. R. A., 62. The extent to which our own Court has gone in recognizing and approving this doctrine is thus stated in *Crocker v. Collins, supra.*

"But where such possession [adverse possession for the statutory period] is accompanied with other circumstances, which would render it inequitable that the public should assert its rights to regain possession, then, upon the principle of estoppel, a party may be protected against the assertion of right by the public in order to prevent manifest wrong and injustice."

It will be noted that the foregoing view authorizes the application of the principle of estoppel only where there has been adverse possession for the statutory period, and then only to prevent manifest wrong and injustice.

In the case at bar there would seem too little, if any, basis, in fact, for the contention that the occupation of the site in the street, for the erection and maintenance of the monument, was adverse. As pointed out above, the entry was permissive, and there is no evidence that the character of the occupation was ever changed. *Williamson v. Abbott,* 107 S. C., 397; 93 S. E., 15. Even if that were not so, it could not be held, as we have seen, that the use of the street, for a purpose of this kind, was so inconsistent with the objects for which the street was held and controlled as to raise any inference that the occupa-

tion was adverse to the rights of the city, with respect to the possession and control of its streets. *Jones v. Houston* (Tex. Civ. App.), 188 S. W., 688. *People v. Marshall Field & Co.,* 266 Ill., 609; 107 N. E., 864; L. R. A., 1915F, 937; Ann. Cas., 1916B, 743. *Tompkins v. Hodgson,* 2 Hun (N. Y.) 146. *Sears v. Hopley,* 103 Ohio St., 46; 132 N. E., 25; 16 A. L. R., 925. But, even if such adverse possession, on the part of those asserting estoppel, were not essential, it is unquestionable that they must bring themselves clearly within the broad rule that the application of the doctrine is necessary, "in order to prevent manifest wrong and injustice."

It is of the essence of equitable estoppel that the party entitled to invoke the principle shall have been misled to his injury. *Bank v. Granite Co.,* 96 S. C., 106; 79 S. E., 985. *Gaston v. Brandenburg,* 42 S. C., 348, 351; 20 S. E., 157. *Croker v. Beaufort,* 45 S. C., 269; 22 S. E., 885; 2 Pomeroy, Eq. Jurisp. § 805. Assuming, for the purposes of discussion, that the plaintiffs are entitled to stand in the shoes of the builders and dedicators of this monument, in what way were they misled? There is no evidence that the city made any misrepresentation, or any concealment of facts; nor is there any evidence of inequality, in the knowledge of the parties, as to extent of the legal rights conferred on the one hand and acquired on the other as a result of the city's permission to erect the monument. The essential elements of estoppel, as to the fraudulent or unconscionable conduct of the party sought to be estopped, would seem to be wholly lacking in this case. *Gaston v. Brandenburg, supra.* But, of even more conclusive force, as will be pointed out in the discussion of the case in another phase, is the insufficiency of the showing of injury on the part of the plaintiffs to sustain a charge of "manifest wrong and injustice." We are, therefore, clearly of the opinion that, in so far as plaintiffs assert title, or the exclusive right to the occupancy of this plot of

ground in the street, under the doctrine of equitable estoppel, their position is untenable.

If the rights of the city, in this portion of the street, have not been divested by dedication or by estoppel, then the land upon which the monument stands is unquestionably subject to the exclusive control of the city authorities for street purposes. By express grant from the State, the City Council is vested with plenary discretionary powers. 19 Stat., 106; Section 4570, Code, 1922. As we have seen, so essential are these powers of control, over streets, to the growth and prosperity of a city, and to the convenience and safety of the public for whose benefit the streets were dedicated, that the common council can no more denude itself of those powers than it can of its power to legislate for the health and morals of its inhabitants. *Wabash R. R. v. Defiance, supra. Spencer v. Mahon, supra.*

That, as a general rule, the Courts will not interfere with the exercise of these discretionary powers by a municipal body, except in cases of fraud or clear abuse of power, is thoroughly well-settled law. 32 C. J., 260, § 410. *Field v. Barber Asphalt Co.,* 194 U. S., 618; 24 Sup. Ct., 784; 48 L. Ed., 1142. *State v. Board of Commr's,* 100 Minn., 150; 110 N. W., 1121; 9 L. R. A. (N. S.), 1045. *Hessin v. City of Manhattan,* 81 Kan., 153; 105 Pac., 44; 25 L. R. A. (N. S.), 228. And see *Haesloop v. Charleston,* 123 S. C., 272; 115 S. E., 596.

If this were a case of ordinary encroachment upon, or obstruction of, a street by private parties, and if the exercise of the council's discretion in the premises were governed wholly by the law applicable to that state of facts, there would be no doubt that the council's action was an entirely valid exercise of the city's power to control and direct the use of the street in the interest of the public convenience, safety, and common good. Certainly, the ordering of the removal of an obstruction in a street was an act clearly within the scope of the council's powers, and the

fact that the monument was not a substantial obstruction, or that the council's action was ill-advised and inexpedient, would afford no ground for injunction. 32 C. J., 261, § 410. In this aspect of the case, however, having to do with whether the monument was, and is, such an obstruction as to interfere seriously with the use of the street, for the primary purposes of passage, travel, and communication, we perceive no ground for valid criticism of the council's judgment. The evidence strongly tended to establish that the monument, occupying a space of at least 30 feet square, in the center of a congested street, is not only an obstruction which interferes with the convenient use of the street for travel, but is a serious menace to the safety of the traveling public under existing conditions, vastly different from those of 30 years ago, brought about by the phenomenal growth of the city, and by the marvelous change in the means and methods of street transportation. In so far, therefore, as the plaintiffs' alleged right to injunctive relief is based upon the theory that the city has lost its rights in this land for primary street purposes, or that the monument is not such an obstacle or menace to the use of the street for these primary purposes as would warrant its classification and condemnation as an "obstruction," or as a nuisance, in the sense indicated, we are clearly of the opinion that their position is untenable.

But, as we apprehend, the exercise of the council's discretion in this case is not to be referred wholly to the city's broad powers to control the streets, and the validity of the exercise of that discretion does not depend wholly upon whether the monument is an obstruction or a street nuisance, in the sense just considered. We are clearly of the opinion that the circumstances under which this monument was erected, and all the facts of the case so forcefully urged upon our attention by plaintiffs' able counsel, to establish a technical dedication of the land or title to the land by virtue of equitable estoppel, are fully sufficient to create,

by clear implication, in so far as the city's interest is involved, a charitable trust in the monument itself, and to impose upon the governing body of the municipality all the duties of trustees of such a trust. Whether the implied trust, thus created, be denominated a resulting or constructive trust is, for the purposes of this case immaterial. 39 Cyc., 26. *Kaphan v. Toney* (Tenn. Ch. App.), 58 S. W., 909, 913. When the devoted women of the Ladies' Memorial Association erected this monument upon one of the city's streets, by express permission of the City Council, and dedicated it to the memory of the Confederate dead of Greenville County, so far as the record discloses, they regarded their labor of love as well finished, and their trust as fully discharged. Thenceforth, the monument belonged to the public. It stood in, and became for the time a part of, a street exclusively controlled by the city authorities. No attempt appears to have been made by the Memorial Association to retain any title to the monument, or control of its maintenance and disposition. In those circumstances, from the relation of the parties and the nature of the transaction, an intention to create a trust might well be presumed. But whether intended or not, we are satisfied that this monument is now held in trust by the city—certainly, in so far as any right to remove and dispose of it is concerned—subject to the duty of faithfully preserving and employing the property in accordance with the purpose for which the monument was erected.

That a municipal corporation may become the trustee of a charitable trust, is well settled. See elaborate collation of authorities. Annotation, 10 A. L. R., 1368. That the purpose of the erection and maintenance of this monument is one for which a municipality in this jurisdiction is entirely competent to accept and administer a trust is not open to question. See *Sargent v. Cornich,* 54 N. H., 18. *Lawrence v. Prosser,* 89 N. J. Eq., 248; 104 Atl., 772; Smith's estate, 181 Pa., 109; 37 Atl., 114. In

that view it is apparent that, upon the City Council's obligation, under its practically unlimited police power, to devote this city street to the appropriate uses best calculated to subserve the public safety and the common good, is here superimposed the duty of discharging this trust, in relation to the monument, by so preserving, caring for, and disposing of the memorial property as faithfully and effectually to promote the laudable and beneficent purpose for which the monument was erected. Specifically, therefore, our only legitimate inquiry here takes the form of whether it has been made to appear that the proposed action of the City Council would constitute such a breach of this trust as entitles the plaintiffs to injunctive relief.

In this aspect of the case, the test to be applied to the council's exercise of their discretionary powers is the same as if the title to the monument were held by an incorporated society, or by private individuals, as trustees. *Haesloop v. Charleston,* 123 S. C., 272; 115 S. E., 596, 600. If it appeared that title to this memorial property were now vested in, and held by, certain individuals, under the terms of an express trust created by the original Ladies' Memorial Association, and that the plaintiffs were now seeking to enjoin these trustees from removing the monument from its present location for the purpose of erecting it on another spot in the city of Greenville, would the case made by plaintiffs establish such breach of the trustees' fiduciary obligations as would justify the interference of a Court of Equity? Clearly not, as we think, for reasons apparent upon the face of the record. To such charge of breach of trust these trustees would answer in this wise: The City Council, in the legitimate exercise of their legislative power, have determined that the monument as now located constitutes such an interference with the use of the street as to require its removal, and has so ordered; we have no paramount title to the land upon which the monument stands; the monument itself can be taken down and

reërected on another site, without injury to the physical property; the partciular spot on which the monument stands has no inseparable connection with the purposes for which the memorial shaft was erected; the soil has not been consecrated by the bones and ashes of the dead, or hallowed by sacrificial blood; indeed, as a result of the changes wrought by the years, the present site of the monument is no longer the most suitable spot upon which such a shaft should stand, either to commemorate the devotion of its founders or to effectuate the patriotic object of its erection and dedication; and in the exercise of our discretion as trustees, in an endeavor faithfully to discharge the trust imposed, we propose to remove the monument from its present location and reërect it upon what we deem to be an available and appropriate site. If that showing were here made by parties having this monument in charge as trustees, we perceive no valid ground upon which a Court of Equity could interfere with the exercise of their discretion. In their capacity as trustees of this memorial property, that is substantially the showing here made by the city council.

In this aspect of the matter, which has a direct bearing upon the plaintiffs' contention of fact above adverted to, that, as Confederate veterans, the removal of the monument would result in such irreparable injury to them as would support an equitable estoppel, the proposed action of the City Council warrants brief additional comment. If the contemplated action of council involved the demolition of this monument, and the consignment of its memorial stones to a junk heap or the city rock pile, the validity of plaintiffs' claim of injury would, we apprehend, be conceded by all right-thinking persons. But such is not the case made. The plaintiffs themselves allege that the proposed action involves merely the removal of the monument from its present location, and its reërection intact upon a site in front of the County Courthouse. In what manner and to what extent has it been made to appear that such step would dese-

crate the monument or subvert the sacred and beneficent purpose of its founders? The evidence establishes that at the time of the passage of the ordinance the council had before them petitions, signed by 30 Confederate veterans of Greenville County, and by 19 members of the Greenville Chapter of the United Daughters of the Confederacy, praying that the removal of the monument to the new location be authorized and executed by the council. So far as the record discloses, the signers of these petitions have as substantial and as deep an interest in the administration of the City Council's trust in this memorial property as have the plaintiffs. If the validity of the council's action were dependent upon an expression of the wishes of ex-Confederate soldiers, or of their descendants, there would seem to be, in this showing of a vote of 49 to 4, no ground to impeach their action. But behind this *prima facie* showing lies a consideration adequately disclosed by the record, which to the Court is of more controlling weight. The monument was dedicated to the memory of the Confederate dead of Greenville County. The obvious and avowed object of its erection (to paraphrase the Trescott inscription) was, not only to serve as a record of the tender reverence in which the memory of the gallant dead was held by the builders, but to recall to the children and kinsmen of these men, who glorified a fallen cause by the simple manhood of their lives, and by the heroism of death, how worthily they lived, and how nobly they died; to remind the stranger in future times that these were men "whom power could not corrupt, whom death could not terrify, and whom defeat could not dishonor;" and to enlighten the understanding, correct the temper, purify the heart, and elevate the affections of the South Carolinian of another generation by inculcating the generous and noble sentiment that the example of these men lives on to teach "all who may claim the same birthright that truth, courage, and patriotism endure forever." That the effectuation of that high object might be better

subserved by removing this monument from the center of a congested city street, surrounded by the din and clamor of raucous automobile traffic, where neither kinsman nor stranger could pause to read the inscription without incurring jeopardy of life or limb, to another spot where the real significance of this sermon in stone would be more likely to arrest the reverent attention of the wayfarer, and to sink into the hearts and minds of rising generations, would seem to be too apparent to warrant argument. *Ex parte McCall,* 68 S. C., 489; 47 S. E., 974. Certainly in the state of the facts disclosed by the record, we cannot say that the contemplated removal and reërection of the monument constitutes such a breach of the council's fiduciary duty, as trustees of this memorial property, as entitles the plaintiffs to enjoin their action.

Under the foregoing views it is unnecessary to consider whether the plaintiffs have shown such peculiar interest in the monument, differing, not only in degree, but in kind, from the general public, as entitles them to maintain the action. Out of deference to the thin, and now almost vanished, "gray line" of which these four plaintiffs are a worthy part, we have given the case as full and careful consideration as if the plaintiffs' technical right to maintain the action were unquestioned; but we are not to be understood as passing on the point as a question of law.

The judgment of the Circuit Court is reversed, and the complaint dismissed.

Reversed.

MR. JUSTICES WATTS and COTHRAN concur.

MR. CHIEF JUSTICE GARY did not participate.

MR. JUSTICE FRASER: I concur in the result merely. I think under the case of *Ex parte McCall,* 68 S. C., 489; 47 S. E., 974, the location of a monument, like the location of a cemetery, may be removed when the location, on account of its surroundings, is no longer a suitable place for that purpose. I think the showing here is ample, that

the present location has become unsuitable, and therefore the location should be changed.

MR. JUSTICE WATTS concurs, as well as in the final opinion of Mr. JUSTICE MARION.